O’Connor, C.J.
{¶ 1} In this appeal, we address whether all members of a plaintiff class alleging violations of the Ohio Consumer Sales Practices Act (“OCSPA”), R.C. Chapter 1345, must have suffered injuries as a result of the conduct challenged in the suit. We hold that they must and therefore reverse the judgment of the court of appeals.
Relevant Background
{¶ 2} This appeal arises from two related class-action lawsuits that were first brought by appellees, Jeffrey and Stacy Felix, nearly 15 years ago. In each suit, the Felixes sought damages from appellants, Ganley Chevrolet, Inc., and Ganley Management Company (collectively, “Ganley”), as well as declaratory and injunctive relief. Although the issues before us are discrete legal ones, we summarize the history of the case for context.

The Transaction

{¶ 3} The Felixes contend that they went to Ganley in March 2001 to purchase a 2000 Chevy Blazer. They allege that Ganley used a zero-percent-interest financing offer to lure Jeffrey Felix to sign a contract to purchase the vehicle.
{¶ 4} The purchase contract provided that it was “not binding unless accepted by seller and credit is approved, if applicable, by financial institution.” The contract also contained an arbitration clause that required that “any dispute between you and dealer (seller) will be resolved by binding arbitration.”[1]
*330 {¶ 5} When the Felixes returned a few days later to sign the promissory note and security agreement, Ganley purportedly told them that the financing institution would approve them for financing only at 1.9 percent interest, not at the zero percent interest previously represented to them. The Felixes reluctantly agreed to the 1.9 percent rate.
{¶ 6} More than a month later, Ganley informed the Felixes that they had not been approved for financing at the 1.9 percent interest rate. Ganley told the Felixes that they could obtain a 9 percent interest rate with Huntington Bank; the Felixes claim that Ganley contacted Huntington Bank without their permission. The Felixes refused. Soon thereafter, they brought the first of two suits against Ganley in the Cuyahoga County Common Pleas Court.

The Initial Lawsuit

{¶ 7} In their first action, which would become a class-action suit with the Felixes as representatives of the class, the Felixes sought damages under the OCSPA.[2]
{¶ 8} The first three counts of the complaint alleged the class-action claims that are at issue here. The first count asserted that the arbitration clause used by Ganley was unconscionable and that various practices of Ganley pertaining to the clause violated the OCSPA. Counts two and three alleged that Ganley had committed unfair and deceptive consumer sales practices against the class.
{¶ 9} In their prayer for relief for the class, the Felixes sought certification of their proposed classes of plaintiffs and defendants, an order declaring the arbitration clause unconscionable and void, injunctive relief, “monetary damages against Defendants, jointly and severally, where appropriate to each plaintiff,” and reasonable attorney fees and costs. The Felixes did not specifically request $200 in damages for each class member. Nor did they seek actual damages for each class member. They did, however, make those requests in their prayer for *331 relief in their individual capacities. More specifically, in their individual capacity, they sought “three times the amount of their actual damages or two hundred dollars ($200.00), for each unlawful act specified, whichever is greater,” punitive damages, attorney fees and costs, and injunctive relief.

The Second Lawsuit

{¶ 10} The second lawsuit, brought several months after the first suit, is a declaratory-judgment action. The declaratory-judgment action also became a class-action suit.
{¶ 11} The first count of the declaratory-judgment complaint sought a declaration that the arbitration clause is unconscionable. The second, third, and fourth counts sought declarations that Ganley committed unfair and deceptive consumer sales practices with respect to the arbitration clause. And count five requested a declaration that Ganley made false statements, representations, and disclosures of fact and defrauded customers as to the arbitration clause.
{¶ 12} Ganley moved to stay the proceedings in both suits so that arbitration in accordance with the arbitration clause could proceed. The trial court held a consolidated hearing on the motions and denied them without opinion. Ganley appealed that order to the Eighth District Court of Appeals.[3] Felix v. Ganley Chevrolet, Inc., 8th Dist. Cuyahoga Nos. 86990 and 86991, 2006-Ohio-4500, 2006 WL 2507469 (“Felix I”).
The Initial Appeal: Felix I
{¶ 13} In its appeal from the denial of the motion to stay, Ganley argued that the trial court erred by failing to stay the proceedings pending arbitration pursuant to R.C. 2711.02 because the purchase contract contains a clear and conspicuous arbitration clause. The Eighth District affirmed the trial court’s judgment, holding that the arbitration clause was unconscionable and that there was no valid, enforceable agreement that required the parties to arbitrate.
{¶ 14} In so doing, the appellate court recognized that R.C. 2711.02(B) requires a trial court, upon application of a party, to stay proceedings in any action in which the court is satisfied that an issue in the case is subject to arbitration pursuant to a written agreement between the parties. Felix I at ¶ 12. But it also noted that R.C. 2711.01(A) provides that a provision for arbitration “shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.” Id. at ¶ 15. It then turned to the Felixes’ claims that the arbitration provision was unconscionable and concluded that it was both procedurally and substantively unconscionable. Id. at ¶ 22-23.
*332 {¶ 15} We declined Ganley’s request for review of that decision, Felix v. Ganley Chevrolet, Inc., 112 Ohio St.3d 1470, 2007-Ohio-388, 861 N.E.2d 144, and therefore the unconscionability of the arbitration clause is not before us in this appeal. The issues before us arose after the Eighth District remanded the cause to the trial court.

The Remand

{¶ 16} After remand, the parties litigated for another five years. Eventually, the trial court certified a class of plaintiffs pursuant to Civ.R. 23(B)(2) and (B)(3) and ruled that all class members could recover damages.
{¶ 17} The putative class includes the following:
All consumers of Vehicles from any of the 25 Ganley Companies (see Plaintiffs Chart, Exhibit A, filed August 18, 2003) within the two-year period preceding commencement through the present date (the Class Period), who signed a purchase agreement containing the arbitration clause at suit or one substantially similar thereto.
{¶ 18} The trial court held that Ganley’s inclusion of the arbitration provision in its purchase agreements with consumers violated the OCSPA and established a basis for classwide relief under Civ.R. 23(B)(2) and (B)(3). It then announced that it would “issue relief to protect those class members from prejudice” caused by Ganley’s “common course of conduct” in the use of the arbitration clause. It noted that “[r]e-litigating a class member’s right to relief over and over again would be a drain on the judiciary and serve no valid purpose” and that “[fjew if any class members would likely be able to effectively challenge [Ganley] due to the cost of litigation.” The trial court ruled that the OCSPA at least permitted, and perhaps required, a classwide award of damages for Ganley’s conduct, which it described as a “significant violation of the law.” The trial court wrote, “To allow [Ganley] to emerge from this seven-year legal battle, during which time they continued to use the offending clause, without sanction, would defeat the policies underlying CSPA and the rule of law” and “reward lawlessness aimed primarily at consumers.” Citing its “discretion,” the trial court awarded $200 per transaction to each class member.
{¶ 19} Ganley again appealed.
The Second Appeal: Felix II
{¶ 20} Before the Eighth District, Ganley argued that the trial court “erred as a matter of law and abused its discretion in certifying, for purposes of a claim under the [CSPA], a class of customers who signed purchase agreements that included an arbitration provision.” (Brackets sic.) A divided panel of the *333 appellate court affirmed the trial court’s order certifying the class. 2013-Ohio-3523, 2013 WL 4238945 (“Felix IF’). In so doing, it rejected Ganley’s claims that the class definition, and time period were overbroad and ambiguous, id. at ¶ 12-15, and that the Felixes had not established the commonality, predominance, and typicality prerequisites to class certification set forth in Civ.R. 23(B), id. at ¶ 17-36.
{¶ 21} The appellate court rejected Ganley’s claim that certifying an “all customers” class for the OCSPA violation was improper on the ground that the class contained individuals who had not sustained actual damages as a result of Ganley’s inclusion of the arbitration provision in its sales agreements. But it did so without squarely addressing the crux of Ganley’s claim, i.e., that there was no showing that all class members had suffered damages. Instead, the majority held that the propriety of the trial court’s order on damages was outside the scope of the appellate court’s scope of review because Ganley had assigned as error only the trial court’s certification of the class. Id. at ¶ 44.

The Appeal Before Us

{¶ 22} Ganley sought this court’s discretionary review. We agreed to address the following propositions of law:
A class action cannot be maintained on behalf of a putative class that includes individuals who did not sustain actual harm or damage as a result of the challenged conduct, which is a required part of the rigorous analysis under Ohio R. Civ. P. 23; [and]
In a class action brought under the Ohio Consumer Sales Practices Act, R.C. 1345.09(B) requires the consumers to have sustained actual damages as a result of the challenged conduct.
See 138 Ohio St.3d 1413, 2014-Ohio-566, 3 N.E.3d 1215.
Analysis
{¶ 23} This appeal arises at the intersection of class-action suits and the OCSPA.
{.¶ 24} The procedural aspects of class-action litigation in Ohio are controlled by Fed.R.Civ.P. 23 and Civ.R. 23, depending on whether the matter proceeds in a federal or state court in Ohio. Here, Civ.R. 23 governs. Because the Ohio Rules of Civil Procedure are modeled after the Federal Rules of Civil Procedure, federal law interpreting the federal rule is appropriate and persuasive authority in interpreting a similar Ohio rule. Stammco, L.L.C. v. United Tel. Co. of Ohio, 136 Ohio St.3d 231, 2013-Ohio-3019, 994 N.E.2d 408, ¶ 18, citing Myers v. Toledo, *334 110 Ohio St.3d 218, 2006-Ohio-4353, 852 N.E.2d 1176, ¶ 18, and Marks v. C.P. Chem. Co., Inc., 31 Ohio St.3d 200, 201, 509 N.E.2d 1249 (1987).
{¶ 25} We are mindful that class-action suits are the exception to the usual rule that litigation is conducted by and on behalf of only the individually named parties. Comcast Corp. v. Behrend, 569 U.S. -, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013), citing Califano v. Yamasaki, 442 U.S. 682, 700-701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). To fall within that exception, the party bringing the class action must affirmatively demonstrate compliance with the procedural rules governing class actions. Id., citing Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S.Ct. 2541, 2551-2552, 180 L.Ed.2d 374 (2011).
{¶ 26} The United States Supreme Court has insisted that courts give careful consideration to the class-certification process, holding that Fed.R.Civ.P. 23 is not “a mere pleading standard.” Dukes at 350. Rather, the party seeking class certification must affirmatively demonstrate compliance with the rules for certification and be prepared to prove “that there are in fact sufficiently numerous parties, common questions of law and fact, etc.” (Emphasis sic.) Id. After Dukes, there can be no dispute that a trial court’s rigorous analysis of the evidence often requires looking into enmeshed legal and factual issues that are part of the merits of the plaintiffs underlying claims. Id. at 2552. See also In re Rail Freight Fuel Surcharge Antitrust Litigation — MDL No. 1869, 725 F.3d 244, 253 (D.C.Cir.2013). In doing so, however, the trial court may probe the underlying merits of the cause of action only for the purpose of determining that the plaintiff has satisfied Civ.R. 23. Stammco at ¶ 40.
{¶ 27} Because the appeal before us involves the certification of a class for claims based on alleged violations of the OCSPA, it is necessary to set forth briefly the relevant provisions in that statutory scheme.
{¶ 28} During the period set forth in the class action, the OCSPA provided that a consumer was entitled to relief in an individual action by rescinding the transaction or recovering damages. Former R.C. 1345.09(A), Am.Sub.H.B. No. 681, 137 Ohio Laws, Part II, 3219, 3226-3227. The term “damages” as used in the OCSPA encompasses all forms of pecuniary relief, although it does include “actual damages” and “compensatory damages.” See Whitaker v. M. T. Automotive, Inc., 111 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, ¶ 14.
{¶ 29} Although the OCSPA authorized class actions, it limited the scope of damages that were available in them. Treble and statutory damages were not available in class-action claims brought under the OCSPA. Former R.C. 1345.09(B), 137 Ohio Laws, Part II, at 3227 (“the consumer may rescind the transaction or recover, but not in a class action, three times the amount of his actual damages or two hundred dollars, whichever is greater, or recover damages or other appropriate relief in a class action under Civil Rule 23” [emphasis *335 added]). Instead, according to one Ohio court, the OCSPA limited the damages available in class actions to actual damages, Washington v. Spitzer Mgt., Inc., 8th Dist. Cuyahoga No. 81612, 2003-Ohio-1735, 2003 WL 1759617, ¶ 33.
{¶ 30} This damage limitation is consistent with a policy determination that while treble or statutory damages, punitive damages, and attorney fees are available in actions under consumer-protection statutes to encourage consumers with smaller amounts of damages to bring their claims, Whitaker at ¶ 11, citing Parker v. I & F Insulation Co., Inc., 89 Ohio St.3d 261, 268, 730 N.E.2d 972 (2000); see also Sovern, Private Actions Under the Deceptive Trade Practices Acts: Reconsidering the FTC Act as Rule Model, 52 Ohio St.L.J. 437, 462 (1991), treble statutory damages are not awarded in class actions because class-action lawsuits deter violations of the law by permitting the aggregation of claims. In fact, some courts have suggested that the General Assembly limited damages for class-action suits under the OCSPA in order to protect defendants from being held liable for “huge damage awards.” See, e.g., Washington at ¶ 33.
{¶ 31} Plaintiffs bringing OCSPA class-action suits must allege and prove that actual damages were proximately caused by the defendant’s conduct. Konarzewski v. Ganley, Inc., 8th Dist. Cuyahoga No. 92623, 2009-Ohio-5827, 2009 WL 3649787, ¶ 46 (“class action plaintiffs must prove actual damages under the CSPA”). Proof of actual damages is required before a court may properly certify a class action. Searles v. Germain Ford of Columbus, L.L.C., 10th Dist. Franklin No. 08AP-728, 2009-Ohio-1323, 2009 WL 756645, ¶22. See also Butler v. Sterling, Inc., 6th Cir. No. 98-3223, 2000 WL 353502, *4 (Mar. 31, 2000); Johnson v. Jos. A. Bank Clothiers, Inc., S.D.Ohio No. 2:13-cv-756, 2014 WL 4129576, *3-4 (Aug. 19, 2014).
{¶ 32} These requirements are consistent with the majority of decisions by other states’ appellate courts, which also hold that plaintiffs who bring private causes of action under their states’ consumer-protection statutes are required to plead and prove actual damages or injury.[4] See, e.g., Meyer v. Sprint Spectrum *336 L.P., 45 Cal.4th 634, 642-643, 88 Cal.Rptr.3d 859, 200 P.3d 295 (2009); Wallis v. Ford Motor Co., 362 Ark. 317, 327-328, 208 S.W.3d 153 (2005); Tietsworth v. Harley-Davidson, Inc., 270 Wis.2d 146, 169, 677 N.W.2d 233 (2004); Frank v. DaimlerChrysler Corp., 292 A.D.2d 118, 741 N.Y.S.2d 9, 12-13 (2002); Yu v. Internatl. Business Machines Corp., 314 Ill.App.3d 892, 247 Ill.Dec. 841, 845-846, 732 N.E.2d 1173 (2000); Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 783-784, 792, 719 P.2d 531 (1986). See also Rule v. Fort Dodge Animal Health, Inc., 607 F.3d 250, 255 (1st Cir.2010) (suggesting that recent decisions of the Supreme Judicial Court of Massachusetts show that an actual injury is required to succeed on claim brought pursuant to the Massachusetts consumer-protection statute). It is also consistent with the Supreme Court’s instruction that trial courts are to give more careful consideration in the class-certification process. See, e.g., Dukes, 564 U.S. at 351-352, 131 S.Ct. 2541, 180 L.Ed.2d 374.
{¶ 33} Plaintiffs in class-action suits must demonstrate that they can prove, through common evidence, that all class members were in fact injured by the defendant’s actions. In re Rail Freight Fuel Surcharge Antitrust Litigation— MDL No. 1869, 725 F.3d at 252. Although plaintiffs at the class-certification stage need not demonstrate through common evidence the precise amount of damages incurred by each class member, Behrend, 569 U.S.-, 133 S.Ct. at 1433, 185 L.Ed.2d 515, citing Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544 (1931), they must adduce common evidence that shows all class members suffered some injury. In re Rail Freight Fuel Surcharge Antitrust Litigation at 252, citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), and Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 815-816 (7th Cir. 2012).
{¶ 34} The inquiry into whether there is damage-in-fact is distinct from the inquiry into actual damages: the “[f]act of damage pertains to the existence of *337 injury, as a predicate to liability; actual damages involves the quantum of injury, and relate to the appropriate measure of individual relief.” Martino v. McDonald’s Sys., Inc., 86 F.R.D. 145, 147 (N.D.Ill.1980). As one federal trial court recently explained,
When evaluating damages in the predominance inquiry, “[t]he amount of damages is invariably an individual question and does not defeat class action treatment.” Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir.1975) (emphasis added); see also Negrete v. Allianz Life Ins. Co. of North America, 238 F.R.D. 482 (C.D.Cal. 2002 [sic, 2006]). While determining the amount of damages does not defeat the predominance inquiry, a proposed class action requiring the court to determine individualized fact of damages does not meet the predominance standards of Rule 23(b)(3). See In re Live Antitrust Litigation, 247 F.R.D. 98 (C.D.Cal.2007) (recognizing the distinction between demonstrating the fact of damages and the amount of damages, and determining that while the latter does not preclude class certification, the former does.); Catlin v. Washington Energy Co., 791 F.2d 1343, 1350 (9th Cir.1986) (“[T]he requirement that plaintiff prove ‘both the fact of damage and the amount of damage * * * are two separate proofs’ ”).
Gonzales v. Comcast Corp., E.D.Cal. No. 10-cv-01010-LJO-BAM, 2012 WL 10621, *18 (Jan. 3, 2012).
{¶ 35} If the class plaintiff fails to establish that all of the class members were damaged (notwithstanding questions regarding the individual damages calculations for each class member), there is no showing of predominance under Civ.R. 23(b)(3). See Behrend, 569 U.S.-, 133 S.Ct. at 1432, 185 L.Ed.2d 515; see also Cullen v. State Farm Mut. Auto. Ins. Co., 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.3d 614, ¶ 48. Indeed, a key purpose of the predominance requirement is to test whether the proposed class is sufficiently cohesive to warrant adjudication by representation. Amchem Prods, at 623.
{¶ 36} “Perhaps the most basic requirement to bringing a lawsuit is that the plaintiff suffer some injury. Apart from a showing of wrongful conduct and causation, proof of actual harm to the plaintiff has been an indispensable part of civil actions.” Schwartz & Silverman, Common Sense Construction of Consumer Protection Acts, 54 U.Kan.L.Rev. 1, 50 (2005). We agree, and we hold that all members of a class in class-action litigation alleging violations of the OCSPA must have suffered injury as a result of the conduct challenged in the suit.
*338 {¶ 37} Here, the class, as certified, fails because there is no showing that all class members suffered an injury in fact. The broadly defined class encompasses consumers who purchased a vehicle at Ganley through a purchase contract that contained the unconscionable arbitration provision. But there is absolutely no showing that all of the consumers who purchased vehicles through a contract with the offensive arbitration provision were injured by it or suffered any damages.
{¶ 38} The trial court’s holding that it could award $200 to each member of the class as a matter of the trial court’s discretion is based on a fiction. There is no authority in the statutory scheme or in our precedent to support a damages award to a class member in class-action litigation arising from the OCSPA absent a showing that the class member was injured and sustained damages as a result of the defendant’s conduct.
{¶ 39} To the extent that the Felixes contend that they and other class members are entitled to statutory damages as class members because R.C. 1345.09 does not limit the term “damages” to “actual damages,” they are mistaken. That conclusion ignores the General Assembly’s clear intent, expressed in the statute’s language, to distinguish between damages available “in an individual action,” former R.C. 1345.09(A), 137 Ohio Laws, Part II, at 3227, “but not in a class action,” former R.C. 1345.09(B), id.
{¶ 40} Nor is our review of the question of class members’ damages, or lack thereof, foreclosed for want of a final, appealable order, as the Felixes contend. The certification of the putative class is before us, and as the dissenting judge in the court of appeals recognized, “the CSPA’s damages limitation impacts not only the damages that may ultimately be recovered by a properly certified class but whether a putative class may be properly certified as a Civ. R. 23(B)(3) CSPA class in the first instance.” Felix II, 2013-Ohio-3523, 2013 WL 4238945, ¶ 72 (Rocco, J., dissenting).
{¶ 41} Because the class certified in this case includes plaintiffs whose damages are, at best, inchoate, the class as certified is inconsistent with former R.C. 1345.09(B), 137 Ohio Laws, Part II, at 3227, and Civ.R. 23. See Stammco, L.L.C., 136 Ohio St.3d 231, 2013-Ohio-3019, 994 N.E.2d 408, ¶ 53, quoting Messner, 669 F.3d at 824 (“ ‘If * * * a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant’s allegedly unlawful conduct, the class is defined too broadly to permit certification’ ”). Although trial judges enjoy broad discretion in determining whether a class can be certified, that discretion is not unlimited, particularly when, as here, the trial judge completely misconstrues the letter and spirit of the law. Howland, v. Purdue Pharma L.P., 104 Ohio St.3d 584, 2004-Ohio-6552, 821 N.E.2d 141, ¶ 25.
*339 {¶ 42} Accordingly, we vacate the trial court’s order certifying the class and remand the cause to the trial court for proceedings consistent with this opinion’s guidance on the necessity of actual damages in class-action litigation based on the OCSPA. See Warner v. Waste Mgt., Inc., 36 Ohio St.3d 91, 99, 521 N.E.2d 1091 (1988). Accord Stammco, L.L.C. v. United Tel. Co. of Ohio, 125 Ohio St.3d 91, 2010-Ohio-1042, 926 N.E.2d 292, ¶ 12, citing Marks v. C.P. Chem. Co., 31 Ohio St.3d at 201, 509 N.E.2d 1249 (even when an appellate court finds that the trial court abused its discretion in crafting a class, the appellate court should not proceed to formulate the class or issue itself).
Conclusion
{¶ 43} We reverse the judgment of the Eighth District Court of Appeals, and we remand the cause to the trial court for further proceedings consistent with our opinion.
Judgment reversed and cause remanded.
Pfeifer, O’Donnell, Lanzinger, Kennedy, and French, JJ., concur.
O’Neill, J., dissents.

. The arbitration clause was placed immediately after the heading “Optional Equipment:’
*330 B. OPTIONAL EQUIPMENT Arbitration-Aiiy dispute between you and dealer (seller) will be resolved by binding arbitration. You give up your right to go to court to assert your rights in this sales transaction (except for any claim in small claims court). Your rights will be determined by a neutral arbitrator, not a judge or jury. You are entitled to a fail- hearing, but arbitration procedures are simpler and more limited than rales applicable in court. Arbitrator decisions are as enforceable as any court order and are subject to a very limited review by a court. See general manager for information regarding arbitration process.

. The original complaint was filed in 2001 as a suit by the Felixes, individually, against Ganley. The fourth amended complaint, filed in May 2003, brought suit by the Felixes on them own behalf and on behalf of a class. The Felixes described the class as “all consumers of vehicles from any of the Ganley companies, within the two year period preceding commencement or since, who signed a purchase agreement containing the following arbitration clause, or anything substantially similar to ”

. An order granting or denying a motion for stay pending arbitration is a final, appealable order. R.C. 2711.02(C).

. Some courts treat the failure to sufficiently allege and demonstrate damages in consumer-protection claims as a failure to establish standing or ripeness. See, e.g., Neese v. Lithia Chrysler Jeep of Anchorage, Inc., 210 P.3d 1213, 1219, 1222 (Alaska 2009) (holding that there was no error in dismissing, on standing grounds, a complaint alleging violation of Alaska’s consumer-protection law and other claims when the complaint did not allege that an injury was caused by a ear dealership); Lee v. Am. Express Travel Related Servs., 348 Fed.Appx. 205, 207, 2009 WL 2017665 (9th Cir.2009) (affirming dismissal of putative class-action claims against credit-card issuers who allegedly violated California’s consumer-protection statute by including unconscionable arbitration provisions in their credit-card agreements because the plaintiffs had not been injured by the “mere inclusion” of those provisions in the agreements); Rivera v. Wyeth-Ayerst Laboratories, 283 F.3d 315, 319-320 (5th Cir.2002) (holding that plaintiffs lacked standing to bring complaint alleging violation of Texas’s consumer-protection law and other claims against a drug manufacturer because the complaint did not allege injury and causation); Bowen v. First Family Fin. Servs., Inc., 233 F.3d 1331, 1341 (11t *336 Cir.2000) (“In light of the increasing use of [arbitration] agreements in a wide variety of consumer transactions, as well as in the employment context, requiring a plaintiff seeking relief from an arbitration agreement to demonstrate a real threat that the agreement will be invoked against him helps maintain a manageable caseload for the courts and prevents courts from becoming merely legal counselors and their adjudications merely advice. If and when [the lender] seeks to compel arbitration of a [Truth in Lending Act, 15 U.S.C. 1601 et seq.] claim, the plaintiffs can challenge the agreement as unenforceable at that time” [footnote omitted]), citing Chicago Bd. of Trade v. Commodity Futures Trading Comm., 704 F.2d 929, 933 (7th Cir.1983). The questions before us are framed neither as standing nor ripeness issues, and we intimate no opinion on those questions of law, particularly given that the United States Supreme Court is now considering, on standing grounds only, whether a plaintiff may bring suit under the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq., alleging as his injury only violations of his statutory rights under the act. Robins v. Spokeo, Inc., 742 F.3d 409 (9th Cir.2014), cert. granted, 135 S.Ct. 1892, 191 L.Ed.2d 762 (2015).