[Cite as *Ford Motor Credit Co. v. Agrawal*, 2016-Ohio-5928.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103667**

# FORD MOTOR CREDIT COMPANY

PLAINTIFF-APPELLANT/COUNTER-DEFE
NDANT

vs.

# SUDESH AGRAWAL

DEFENDANT-APPELLEE/COUNTER-PLAI
NTIFF

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-04-536588

**BEFORE:** Keough, P.J., S. Gallagher, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** September 22, 2016

**ATTORNEYS FOR APPELLANT**

Brett K. Bacon
Gregory R. Farkas
Colleen C. Murnane
Frantz Ward, L.L.P.
200 Public Square, Suite 3000
Cleveland, Ohio 44114

Brian D. Boyle
O'Melveny & Myers, L.L.P.
1625 Eye Street, N.W.
Washington, D.C.   20006

Warren E. Platt
Snell & Wilmer
400 E. Van Buren Street
Phoenix, Arizona 85004


**ATTORNEYS FOR APPELLEE**

Patrick J. Perotti
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, Ohio 44077

Robert S. Belovich
9100 South Hills Road, Suite 325
Broadview Heights, Ohio 44147

Anand N. Misra
The Misra Law Firm, L.L.C.
3659 Green Road, Suite 100
Cleveland, Ohio 44122

(Continued)

**For Department of Taxation**

Mike DeWine
Ohio Attorney General
By:   Robert C. Maier
Assistant Attorney General
30 East Broad Street, 16th Floor
Columbus, Ohio 43215

Mike DeWine
Ohio Attorney General
By:   Christine T. Mesirow
Assistant Attorney General
30 E. Broad Street, 25th Floor
Columbus, Ohio 43215

KATHLEEN ANN KEOUGH, P.J.:

{¶1}   Plaintiff/counter-defendant, Ford Motor Credit Company ("Ford Credit"), appeals from the trial court's judgment granting the motion of defendant/counter-plaintiff, Sudesh Agrawal, for class certification of a nationwide class and an Ohio subclass under Civ.R. 23(B)(2) and (3).   Ford Credit argues that the trial court erred in granting class certification because Agrawal's claims and Ford Credit's defenses require individualized inquiries that preclude classwide adjudication.   Finding merit to the appeal, we reverse and remand for proceedings consistent with this opinion.

## I.   Facts and Procedural History

{¶2}   The facts of this case were set forth in *Ford Motor Credit Co. v. Agrawal*, 8th Dist. Cuyahoga No. 96413, 2011-Ohio-6474 ("*Agrawal I*") as follows:

> The controversy arises from Agrawal's lease of a Windstar minivan from a Ford dealer under Ford Credit's Red Carpet Lease ("RCL") program in 2000.   Lease provisions under the RCL program specify that lessees "may be charged for excessive wear *based on our standards for normal use*" and that the lessee is "responsible for repairs of All Damages which are not a result of normal wear and use * * *.   You will pay the estimated costs of such repairs, even if the repairs are not made prior to Holder's sale of the Vehicle."   (Emphasis added.)
>
> Since 2006, Ford Credit has used third-party inspectors to inspect leased vehicles for excess wear and use ("EWU") at lease end.   Prior to 2006, including when Agrawal returned his vehicle in 2003, Ford dealers across the country performed those inspections using Ford Credit guidelines and templates.
> The RCL dealer handbook, one such procedure document, is given to Ford dealers or is available to them through Ford Credit's website. Additionally, Ford Credit provides templates to its dealers for use in performing wear and use inspections.   The handbook instructs inspectors that "the 'inspection standard' is equivalent to a 'clean' rather than 'average' used vehicle."   Internal Ford Credit documents explain that

"clean" means the "vehicle is in great condition with only minor dents and chips in body panels," whereas "average" means the "vehicle will have normal wear and tear with dents, chips and scratches in body panels."

The program's lease-end process requires the lessee to present the leased vehicle to a Ford dealer for an EWU inspection. The dealer-inspector then conducts the inspection in accordance with Ford Credit's instructions and enters the result on a Ford Credit form called the Vehicle Condition Report ("VCR"), which has seven carbon plies. Plies one through three are identical, but are different from plies four through seven, which provide columns for additional inspections. The lessee receives ply two, which does not show the columns for additional inspections.

The results of the dealer-inspector's findings are entered in column one of the VCR. Body shop personnel then enter cost estimates for each condition noted by the dealer-inspector. This dealer inspection is referred to as the "First Inspection."

Following the First Inspection, the dealer-inspector sends Ford Credit the VCR, along with any funds collected from the lessee. Ford Credit then includes any unpaid but assessed EWU charges in a final bill sent to the lessee.

Next, the vehicle is transported from the dealer to an auction location. While in transport, another inspection is made by the transport; the purpose of which is to check for any damage that may occur during transportation. No cost estimates are made for the transport-inspection, nor are Ford inspection guidelines used. The results of this transporter-inspection are then entered in column two of the VCR.

Pursuant to the RCL handbook, the "dealer will be financially responsible for any under reported excess wear and use charges." If the EWU charges are over reported, the dealer has no corresponding responsibility. Ford Credit's standard operating procedures prescribe a "Second Inspection" in order to determine whether the dealer has "under reported" the EWU charges during the First Inspection.

Therefore, once the vehicle is delivered to the auctioneer, another inspection and estimate is made. This inspection is performed according to Ford Credit's guidelines. The purpose of this inspection is "to insure that the dealer has actually followed the standards of wear and use." The auctioneer-inspection results, along with cost estimates, are entered into

column three of the VCR. The auction-inspector then computes a difference between the First Inspection and the Second Inspection and enters the amount into the VCR. If the variance shows an underestimate, then a further verifying inspection is conducted by a "Senior Auction Inspector." No such verifying inspection occurs when the dealer estimate is greater than the auction estimate. If the variance is confirmed by the Senior Auction Inspector to be $200 or more, then this variance becomes the basis for imposing financial responsibility on the dealer-inspector.

Agrawal returned his vehicle to the Ford dealership in May 2003, after making all monthly payments on his lease. Upon inspecting his vehicle, the Ford dealer estimated EWU charges of $2,658. Following the First Inspection, and unbeknownst to Agrawal, a Second Inspection found EWU charges in the amount of $194. However, Ford Credit, utilizing the initial estimate, billed Agrawal $2,658.

Agrawal disputed the charges and, on March 11, 2004, Ford Credit filed this action in the Shaker Heights Municipal Court, seeking $2,658 in unpaid EWU charges. Agrawal filed a counterclaim against Ford Credit on June 7, 2004. The case was transferred to the Cuyahoga County Court of Common Please based on Agrawal's request for damages in excess of the municipal court's jurisdiction.

On February 16, 2006, Agrawal amended his original counterclaim, asserting eight claims against Ford Credit based on Ford Credit's assessment of EWU charges: (1) a class claim for "unconscionable leasing practices"; (2) a class claim for violation of public policy; (3) a class claim for breach of contract; (4) a class claim for violation of the federal Consumer Leasing Act ("CLA"), 15 U.S.C. Section 1667a; (5) a class claim for fraud; (6) a class claim for unfair and deceptive trade practices; (7) a claim for unlawful tax, which later was dismissed voluntarily; and (8) an individual claim for violation of the Ohio Consumer Sales Practices Act, R.C. 1345.01.

Agrawal's princip[al] allegations underlying the class claims are that the "normal" standard stated in Ford Credit's lease is different than the "clean" standard stated in Ford's RCL dealer handbook. He points to Ford documents to show that "clean" is a more stringent standard than "average," which is defined as having "normal wear and tear." Thus, Agrawal argues that Ford Credit misrepresents the applicable standard in the lease and correspondingly fails to conduct an inspection in accordance with the standard stated in the lease. Agrawal further alleges that Ford Credit's

operating procedure requiring the dealer to be responsible only for underestimates creates incentives for the First Inspection to be biased towards an overcharge. Moreover, he argues that the fact that Ford Credit requires the related Second Inspection demonstrates the biased nature of the First Inspection.

*Id.* at ¶ 2-14.

{¶3} In 2011, the trial court granted class certification of Agrawal's claims, certifying a nationwide class and an Ohio subclass under Civ.R. 23(B)(2) and (3). In *Agrawal I*, this court affirmed the trial court's judgment granting class certification of a nationwide class and Ohio subclass but reversed class certification of Agrawal's claim for actual damages under the CLA.

{¶4} Ford Credit sought review in the Ohio Supreme Court, which held the case pending its decision regarding class certification issues in *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614. Upon its reversal of the class certification in *Cullen*, the Ohio Supreme Court reversed this court's judgment in *Agrawal I* on the authority of *Cullen*. *Ford Motor Credit Co. v. Agrawal*, 137 Ohio St.3d 561, 2013-Ohio-5199, 2 N.E.3d 238. Upon remand from the Ohio Supreme Court, this court reversed the judgment of the trial court granting class certification and remanded the matter to the trial court for further proceedings in light of *Cullen*. *Ford Motor Credit Co. v. Agrawal*, 8th Dist. Cuyahoga No. 96413, 2014-Ohio-920.

{¶5} Upon remand, Ford Credit expanded the record by producing a large sample of VCRs that were prepared by dealers when lessees returned their vehicles. Ford Credit

also produced an expert report describing the variations in the conditions of individual vehicles as determined by the lease-end inspections. Agrawal did not produce any additional discovery material or expand the class record. He filed a renewed motion to certify the same proposed classes that had been previously certified by the trial court.

{¶6} Upon re-examining the issue of class certification in light of *Cullen*, the trial court again granted Agrawal's motion for class certification. This appeal followed.

## II. Law and Analysis

### A. Standard of Review

{¶7} A trial judge has broad discretion when deciding whether to certify a class action. *In re Consol. Mtge. Satisfaction Cases*, 97 Ohio St.3d 465, 2002-Ohio-6720, 780 N.E.2d 556, ¶ 5. Nonetheless, the trial court's discretion is not unlimited and must be bound by and exercised within the framework of Civ.R. 23. *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 70, 694 N.E.2d 442 (1998). When deciding whether to certify a class, a trial court must conduct a rigorous analysis, and may grant certification only after resolving all relevant factual disputes and finding that sufficient evidence proves that all requirements of Civ.R. 23 have been satisfied. *Cullen,* 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614 at ¶ 2.

### B. Class Action Requirements

{¶8} Under Civ.R. 23(A), one or more members of a class may sue or be sued as representative parties on behalf of all class members only if:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

{¶9} Under Civ.R. 23(B), a class action may be maintained if the requirements of Civ.R. 23(A) are satisfied and one of the Civ.R. 23(B) requirements are met. Civ.R. 23(B)(2) and (3), which are implicated in this case, provide:

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

{¶10} The Ohio Supreme Court has held that in addition to meeting the four threshold requirements under Civ.R. 23(A) and one of the three Civ.R. 23(B) requirements, the class must meet two other implicit requirements: (1) an identifiable class must exist and the definition of the class must be unambiguous, and (2) the named representatives must be members of the class. *Warner v. Waste Mgt., Inc.*, 36 Ohio St.3d 91, 96-98, 521 N.E.2d 1091 (1988).

{¶11} Before certifying the class, the trial court must find that the party seeking certification has proven by a preponderance of the evidence that each of the seven

requirements for class certification are met. *Ritt v. Billy Blanks Ents.*, 171 Ohio App.3d 204, 2007-Ohio-1695, 870 N.E.2d 212, ¶ 34 (8th Dist.).

{¶12} The trial court found that Agrawal met the requirements of Civ.R. 23(A), as well as the requirements of Civ.R. 23(B)(2) and (3). In this appeal, Ford Credit challenges the trial court's finding that Agrawal met the "commonality" requirement of Civ.R. 23(A), i.e., that there are questions of law or fact common to the class. Ford Credit also challenges the trial court's findings that injunctive relief was appropriate under Civ.R. 23(B)(2), and that Agrawal met the predominance requirement of Civ.R. 23(B)(3), i.e., that "issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof," *Cullen*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, at ¶ 30. Ford Credit argues that Agrawal's claims do not satisfy the commonality and predominance requirements because questions of whether each lessee's lease was breached, and whether each lessee sustained damages, cannot be answered without individualized inquiries. Likewise, Ford Credit contends that its affirmative defenses cannot be adjudicated on an all-or-nothing basis. Finally, Ford Credit asserts that the trial court improperly found that Agrawal met the requirements of Civ.R. 23(B)(2) because not all class members would benefit from injunctive relief. Accordingly, Ford Credit contends that the trial court abused its discretion in granting class certification.

C.    Civ.R. 23(B)(2)

{¶13} Civ.R. 23(B)(2) provides that class treatment may be maintained when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." "Claims for individualized relief are not compatible with Civ.R. 23(B)(2) because the relief sought must affect the entire class at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). In other words, as the Ohio Supreme Court stated in *Cullen*, "'[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted — the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Id*. at ¶ 25, quoting *Wal-Mart*, 131 S.Ct. at 2557.

{¶14} In *Cullen*, the plaintiff alleged that State Farm had breached the terms of its standard automobile insurance policy by encouraging policyholders to repair damaged windshields rather than replace them. The trial court certified a class on the theory that a standardized script used by State Farm representatives, which allegedly failed to disclose the replacement option, could serve as common proof that State Farm had breached its contracts. The class sought a declaration that State Farm's practices were illegal and violative of its policies and the obligations owed by fiduciaries under the law, as well as a declaration establishing the damages and remedies due to class members. *Cullen*, 137 Ohio St.3d 373, 2013-Ohio 4733, 999 N.E.2d 614, at ¶ 24.

{¶15} The Ohio Supreme Court, however, found that the claimants had not demonstrated that all class members would benefit from the declaratory relief sought because some of the class members were no longer State Farm policyholders. Thus, the court concluded that those members could not be injured by any future actions taken by State Farm. The court further found that current policyholders who had previously repaired rather than replaced their windshields would have to suffer another damaged windshield that State Farm repaired rather than replaced in order to benefit from the proposed injunctive relief. *Id*. Accordingly, the Supreme Court reversed the appellate court's judgment affirming class certification.

{¶16} Here, Agrawal seeks injunctive relief in the form of "[a]n order enjoining plaintiffs from committing the unfair deceptive and unconscionable practices alleged." Agrawal is no longer a Ford Credit lessee, however, so there is no risk that he will be subject to the application of an improper standard by Ford Credit in his lease-end inspection. Likewise, other members of the certified class are no longer Ford Credit lessees and thus would not benefit from the injunctive relief that Agrawal seeks.

{¶17} The trial court ignored this problem and concluded that Civ.R. 23(B)(2) certification was appropriate because there were some class members from whom Ford Credit had not yet collected EWU charges who would benefit from the requested injunctive relief. But the fact that *some* class members might benefit from declaratory relief does not fulfill Civ.R. 23(B)(2)'s requirement, as unambiguously stated in *Cullen*,

that Agrawal must demonstrate that *all* class members will benefit from such relief. *Cullen*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, at ¶ 25.

{¶18} Accordingly, the trial court erred in finding that Agrawal had satisfied the requirements of Civ.R. 23(B)(2).

D.     Civ.R. 23(B)(3)

{¶19} Certification pursuant to Civ.R. 23(B)(3) requires the trial court to make two findings: (1) that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Cullen* at ¶ 29.

{¶20} "For common questions of law or fact to predominate, it is not sufficient that such questions merely exist; rather, they must present a significant aspect of the case. Furthermore, they must be capable of resolution for all members in a single adjudication." *Cullen* at ¶ 30, citing *Marks v. C.P. Chem. Co.,* 31 Ohio St.3d 200, 204, 509 N.E.2d 1249 (1987). "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Cullen* at *id.*, citing *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir.2012).

{¶21} Our review of the record reveals that individual issues overwhelm the questions common to the class and, therefore, the trial court abused its discretion in certifying the class under Civ.R. 23(B)(3).

**{¶22}** The trial court found that Agrawal's claims are based on standardized lease terms and standard written operating procedures created by Ford Credit, including the dealer handbook, which Agrawal interprets to prescribe a "clean" standard for imposing EWU charges. The trial court found that the class was properly certified under Civ.R. 23(B)(3) because Agrawal's claims are based on "standard lease forms" and the challenged practices are "governed by written operating procedures."

**{¶23}** However, as *Cullen* makes clear, a plaintiff seeking to certify a class based on allegedly common documents and procedures must establish that the documents and procedures were, in fact, uniformly applied to every potential class member. Thus, Agrawal cannot simply assume that every dealer breached the lease by applying Agrawal's interpretation of the dealer handbook. He must prove that essential element for every lessee.

**{¶24}** In *Cullen*, the plaintiff's class action was premised on State Farm's alleged failure to disclose policy benefits through a script used by State Farm agents and representatives that allegedly induced policyholders to repair their windshields without disclosing the option of receiving the cash value of a new windshield. The Ohio Supreme Court concluded, however, that because many policyholders had unscripted conversations with State Farm agents and representatives about their windshield claim, there was no common proof of what any individual policyholder knew when consenting to windshield repair. Thus, it found that "[d]etermining whether State Farm breached

any obligations to insureds necessarily entails an individualized inquiry into each of these communications." *Id.* at ¶ 37.

**{¶25}** Likewise, in this case, Ford Credit's liability cannot be determined on a classwide basis. All of Agrawal's claims require him to prove that every dealer breached the lease by adopting and applying Agrawal's interpretation of the dealer handbook such that lessees were uniformly not assessed EWU charges under the lease form's "normal wear and use" standard, but rather under a "clean" standard that Agrawal contends is applicable under the dealer handbook.

**{¶26}** Agrawal cannot make that showing, however, because Ford Credit presented undisputed evidence to the trial court of actual dealer inspections in which a "clean" standard was not used to assess EWU charges. For example, the evidence reflects that Agrawal's own dealer was not aware of the "clean" inspection passage that Agrawal's claims are based on. The record also includes VCRs containing findings of wear and tear for which no EWU charges were imposed. These VCRs establish that the dealers who filed them read the handbook to require the dealer to inspect for any damage under a "clean" standard, but to impose EWU charges only for damage items that exceeded the "normal wear and use" standard. Other evidence presented by Ford Credit to the trial court upon remand demonstrates that dealers often simply used the Ford-provided templates to determine whether to impose EWU charges, without regard to any standard articulated in the handbook. Thus, even though there is an allegedly "form" agreement, the evidence demonstrates that Agrawal cannot prove by common evidence that all

inspections were conducted under a "clean" standard in determining whether to impose EWU charges at lease-end. In short, uniform application of the "clean" standard to all lessees cannot be proven through evidence common to every lessee.

{¶27} Moreover, even if Agrawal could prove through common evidence that every dealer applied a "clean" standard in imposing EWU charges, class certification under Civ.R. 23(B)(3) is still barred by the requirement that Agrawal demonstrate through common evidence that all class members were in fact injured by Ford Credit's actions.

{¶28} In *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, 49 N.E.3d 1224, the Ohio Supreme Court held that "[p]laintiffs in class-action suits must demonstrate that they can prove, through common evidence, that all class members were in fact injured by the defendant's actions." *Id.* at ¶ 33. In *Felix*, the named plaintiffs alleged that the inclusion of an unconscionable arbitration provision in a vehicle financing contract violated the Ohio Consumer Sales Practices Act. *Id.* at ¶ 8. The trial court certified a class of similarly situated purchasers based on the defendant's "common course of conduct" in its use of the arbitration clause. *Id.* at ¶ 18. This court affirmed. *Felix v. Ganley Chevrolet, Inc.*, 8th Dist. Cuyahoga No. 98985, 2013-Ohio-3523.

{¶29} The Ohio Supreme Court reversed the certification decision, however, finding that there had been no showing that all of the consumers who purchased vehicles through a contract that contained the offensive arbitration provision had actually been injured by the provision or suffered any damages. *Id.* at ¶ 37. The court held that "[a]lthough plaintiffs at the class-certification stage need not demonstrate through

common evidence the precise amount of damages incurred by each class member, * * * they must adduce common evidence that shows all class members suffered *some* injury." *Id.* at ¶ 33. (Emphasis sic.)

**{¶30}** In this case, determining whether lessees can establish the "fact of injury" under Agrawal's theories is not susceptible of classwide proof but requires individualized inquiries. It is undisputed that certain common EWU charges (e.g., mismatched tires, a broken windshield, or a malfunctioning air conditioner) were properly chargeable not because they exceeded "normal" wear and use but because the lease expressly identified these types of damages as chargeable. Individualized inquiry is therefore necessary to determine whether these lessees suffered any injury, even if the dealer imposed an incorrect inspection standard.

**{¶31}** Furthermore, the VCRs submitted by Ford Credit upon remand demonstrate that hundreds of thousands of lessees in Agrawal's nationwide class received higher EWU assessments from the auction house than from the dealer. Because Agrawal contends that the auction house always applied the "normal" wear and use standard to assess a vehicle's EWU, it follows that for any VCR in which the auction house found higher EWU charges than the dealer's alleged "clean" standard, the lessee necessarily suffered no injury. Class certification on such a record is therefore precluded: as the Ohio Supreme Court stated in *Felix*, "[i]f the class plaintiff fails to establish that all of the class members were damaged * * * there is no showing of predominance under Civ.R.23(B)(3)." *Felix*, 145 Ohio St.3d 329, 2015-Ohio-3430, 49 N.E.3d 1224, at ¶ 35.

{¶32} Moreover, even where the dealer's estimate of damage exceeded the auction house's estimate, individualized inquiries are necessary to determine whether the lessee was actually injured under Agrawal's theory. Ford Credit produced evidence upon remand demonstrating that where a particular VCR reveals that the only variation between the dealer and auction house EWU assessments is the estimated cost of repairing the damage, such variations may be explained by the differing labor rates between the retail dealer and wholesale auction house. Ford Credit has a due process right to argue that in these cases, the difference arises not from the application of different inspection standards but from different labor or material rates to repair the same damage, which some of the VCRs reflect. Because the itemized description of EWU damage exists only in each vehicle's VCR record, this information can be ascertained only by examining the actual VCR for every single vehicle.

{¶33} In other cases, where the dealer's estimate exceeded the auction house's by a large margin, disposition of the lessee's claims will require individualized inquiry to determine whether the auction house simply overlooked an element of chargeable damage assessed by the dealer, or there was an intervening repair that affected the condition of the vehicle by the time it reached the auction house. Although Agrawal argues that any individualized inquiry is unnecessary because vehicle-specific information can be gleaned from Ford Credit's databases, the evidence demonstrates that although the databases record the total dealer-imposed EWU charges for each vehicle and the auction house's

estimate, the databases do not itemize the nature of the damage for which the EWU charges were imposed. Accordingly, reference to each VCR is necessary.

{¶34} In short, determining the "fact of injury" under Agrawal's theories requires examination of the VCRs for every vehicle; it is not susceptible of common classwide proof, but requires highly individualized inquiry. Under *Felix*, the need for such individual inquiry precludes class certification under Civ.R. 23(B)(3).

{¶35} Likewise, Ford Credit's affirmative defenses require individualized determinations that preclude class certification. For example, Ford Credit intends to invoke the arbitration clauses that are included in some, but not all, of the class members' leases. Multiple individualized determinations will be required to identify putative class members subject to arbitration, and to determine whether their arbitration agreements are subject to state law contract rules that might affect enforcement of such agreements in particular states. Such individual determinations preclude class certification. *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 728 (9th Cir.2007) (a defendant's intent to seek arbitration of the class would necessitate a state-by-state review to determine whether individual arbitration clauses were enforceable, thereby precluding class certification).

{¶36} Accordingly, we find that this action does not meet the requirements of Civ.R. 23(B)(2) or (3) for class certification. Not all class members will benefit from the requested declaratory relief, and a rigorous analysis of the evidence presented by the parties demonstrates that individual questions predominate over issues common to the

class.  In light of our finding that the requirements of Civ.R. 23(B) for class certification are not met, we need not address Ford Credit's argument that Agrawal's claims do not meet the commonality requirement of Civ.R. 23(A).

**{¶37}** The assignments of error are sustained, and the trial court's judgment certifying a nationwide class and an Ohio subclass is reversed.  We remand for further proceedings consistent with this opinion.

**{¶38}**  Judgment reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR