[Cite as *Estate of Mikulski v. Centerior Energy Corp.*, 2019-Ohio-983.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 107108

ESTATE OF JEROME R. MIKULSKI, ET AL.

PLAINTIFFS-APPELLEES

vs.

CENTERIOR ENERGY CORPORATION, ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-01-457866

**BEFORE:** Boyle, P.J., E.A. Gallagher, J., and Sheehan, J.

**RELEASED AND JOURNALIZED:** March 21, 2019

**ATTORNEYS FOR APPELLANTS**

Mitchell G. Blair
Tracy S. Johnson
Ronald M. McMillan
Calfee, Halter & Griswold, L.L.P.
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio    44114

Zachary Faigen
Allen L. Lanstra
Peter B. Morrison
Douglas A. Smith
Skadden, Arps, Slate, Meagher, & Flom
300 S. Grand Avenue
Los Angeles, California 90071


**FOR APPELLEES**

**Attorneys for Elzetta C. Mikulski**

William Craig Bashein
Bashein & Bashein Co., L.P.A.
35th Floor Terminal Tower
50 Public Square
Cleveland, Ohio    44113

Eric H. Zagrans
Zagrans Law Firm, L.L.C.
5077 Waterford Drive, Suite 302
Sheffield, Ohio    44035

Subodh Chandra
Chandra Law Firm, L.L.C.
1265 West 6th Street, Suite 400
Cleveland, Ohio    44113

Joshua R. Cohen
Cohen, Rosenthal & Kramer, L.P.A.
3208 Clinton Avenue
1 Clinton Place
Cleveland, Ohio    44113

Steven M. Goldberg
Steven M. Goldberg Co., L.P.A.
31300 Solon Road, Suite 12
Solon, Ohio    44139

Daniel R. Karon
Karon, L.L.C.
700 West St. Clair Avenue, Suite 200
Cleveland, Ohio    44113

James M. Kelley, III
Elk & Elk Co., Ltd.
6105 Parkland Boulevard, Suite 200
Mayfield Heights, Ohio    44124

Robert E. Kennedy
Daniel P. Goetz
Weisman, Kennedy & Berris Co., L.P.A.
1600 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio    44115

Jack Landskroner
Landskroner Grieco Merriman, L.L.C.
1360 West 9th Street, Suite 200
Cleveland, Ohio    44113

Dennis R. Lansdowne
Spangenberg, Shibley & Liber, L.L.P.
1001 Lakeside Avenue, East, Suite 1700
Cleveland, Ohio    44114

Eben O. McNair IV
Schwarzwald McNair & Fusco, L.L.P.
1215 Superior Avenue, Suite 225
Cleveland, Ohio    44114-3527

David M. Paris
Nurenberg Paris Heller & McCarthy
600 Superior Avenue, East, Suite 1200
Cleveland, Ohio    44114

Patrick J. Perotti
Dworken & Bernstein Co., L.P.A.
60 South Park Place

Painesville, Ohio    44077

Adam Savett
Savett Law Offices, L.L.C.
6100 Oak Tree Boulevard, Suite 200
Independence, Ohio    44131

Michael F. Becker
The Becker Law Firm, L.P.A.
134 Middle Avenue
Elyria, Ohio    44035

Thomas R. Theado
Gary, Naegele & Theado, L.L.C.
401 Broadway Avenue, Unit 104
Lorain, Ohio    44052-1745

Dennis P. Barron
582 Torrence Lane
Cincinnati, Ohio    45208


**Attorneys for Jerome R. Mikulski**

Robert D. Gary
Jori Bloom Naegele
Gary Naegele Theado, L.L.C.
Duane Building
401 Broadway Avenue, Unit 104
Lorain, Ohio    44052-1745

Joseph M. Sellers
Michelle C. Yau
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.    20005

**For Charlotte Beck**

Charlotte Beck, pro se
501 E. Orangethorpe
27 Magnolia Via
Anaheim, California 92801-0000

MARY J. BOYLE, P.J.:

{¶1} Defendants-appellants, Centerior Energy Corporation and First Energy Corp., as successor-in-interest to Centerior Energy Corporation (collectively "defendants"), appeal from the trial court's order granting class certification. They raise six assignments of error for our review:

1. The trial court erred by certifying the Subclass under Rule 23(B)(3).

2. The trial court erred by considering whether to certify the Class.

3. The trial court erred by certifying the Class due to lack of standing.

4. The trial court erred by certifying the Class under Rule 23(B)(3).

5. The trial court erred by certifying the Class under Rule 23(B)(2).

6. The trial court erred by certifying the Class under Rule 23(B)(1)(a).

{¶2} Finding merit to defendants' first and third assignments of error, we reverse and remand.

## I. Procedural History and Factual Background

{¶3} In December 2001, plaintiffs-appellees, Elzetta C. Mikulski and the estate of Jerome R. Mikulski[1] ("plaintiffs" or "the Mikulskis"), filed four separate actions against defendants for breach of contract in the following cases:

1. *Estate of Jerome R. Mikulski v. Cleveland Elec. Illum. Co.*, Cuyahoga C.P. No. 02-CV-490019;

2. *Estate of Jerome R. Mikulski v. The Toledo Edison Co.*, Lucas C.P. No G-4801-CI-200206364-000;

---

[1]Jerome R. Mikulski passed away during the lower court proceedings. Plaintiffs moved to substitute his estate as a party, and the trial court granted that motion in February 2008.

3. *Estate of Jerome R. Mikulski v. Centerior Energy Corp.*, Cuyahoga C.P. No. 01-CV-457866 ("*Centerior I*"); and

4. *Mikulski v. Centerior Energy Corp.*, Cuyahoga C.P. No. 02-CV-490020 ("*Centerior II*").[2]

In their actions, the Mikulskis alleged that they "owned shares of common stock of Centerior and both of its predecessor companies, The Toledo Edison Company * * * and The Cleveland Electric Illuminating Company[.]" As this court explained in a previous appeal from *Centerior II*, plaintiffs asserted

> that in the mid-1980's, Centerior began improperly manipulating its corporate earnings to appear more profitable. Centerior made payments to shareholders that it purported were dividend payments, which caused appellants to pay taxes on those payments as ordinary income. [Plaintiffs] argue these payments largely consisted of returns of capital, which were not taxable or taxable only at the lower rate applicable to capital gains. According to [plaintiffs], this resulted in substantial overpayment of state and federal taxes for many years.

*Id.* at ¶ 2. Plaintiffs alleged that Centerior's misstatement

> occurred because of Centerior's improper use of construction loan debt servicing costs in calculating its earning and profits ("E&P"). The calculation of E&P is important because any payment to shareholders up to E&P is accounted as a dividend and taxed as ordinary income, but amounts that exceed E&P are classified as a return of capital, which reduces the shareholder's basis in the stock — resulting in no current tax liability — or is taxed as a capital gain to the extent that the payments exceed the shareholder's basis.

*Id.* at ¶ 3.

{¶4} In *Centerior I* — the instant case — plaintiffs' complaint set forth a claim for breach of a written contract and alleged that defendants "over-reported the amount or percentage of the 1986 distributions that was taxable as a dividend for

_____

[2]While the instant appeal only concerns *Centerior I* (Case No. CV-01-457866), some reference to and discussion of *Centerior II* is necessary for background purposes.

income tax purposes" and provided "materially incorrect" information "with respect to the division between dividend and return of capital." Plaintiffs alleged that by "misreporting" the taxable dividends of the 1986 distributions, defendants breached the contract that they had with their shareholders. Plaintiffs' complaint stated that they were bringing the instant action on behalf of

> all common shareholders of Centerior (including without limitation to its predecessor entities) and beneficial owners of Centerior common shares, who in 1987 received a Form 1099-DIV or substitute therefor from Centerior or its agents reporting the tax status of distributions made by Centerior during the calendar year 1986, and the communities comprised of them and their spouses, if any.

{¶5} In January 2002, plaintiffs filed an amended class action complaint, which contained the same class definition as above and added a claim for fraudulent misrepresentation. Defendants filed a joint answer and set forth defenses. Defendants denied that the Form 1099-DIVs "over-reported the estimated amount or percentage of the 1986 distributions that was taxable as a dividend for income tax purposes" and "under-reported the estimated amount or percentage of the 1986 distribution that was a return of capital[.]"[3] Defendants also wholly denied that it provided its common shareholders any materially incorrect information.

{¶6} In May 2002, plaintiffs filed a motion for class certification.

{¶7} Between 2002 and 2003, defendants removed all of plaintiffs' actions to the United States District Court of the Northern District of Ohio, rendering all of the motions before the court of common pleas moot by the removal.

{¶8} Between 2008 and 2009, the United States District Court remanded the

---

[3] In their appellate brief, defendants call plaintiffs' merits action "preposterous" and state that their "theory of liability has never been accepted by *any* court." (Emphasis sic.)

cases back to their respective court of common pleas for lack of jurisdiction. As a result, the cases proceeded to discovery and motion practice regarding class certification.

### A. The Trial Court Denies Class Certification in *Centerior II*

{¶9} The first of plaintiffs' cases to decide the class-certification issue was *Centerior II.* The class definition that plaintiffs set forth in that case was nearly identical to that in *Centerior I*, except it covered the shareholders and beneficial owners of Centerior and its common shares who were issued Form 1099-DIVs from 1988 through 1998.[4] In December 2009, the trial court in that case denied class certification to plaintiffs, finding that "liability as to each plaintiff's claim could not be ascertained on a class-wide basis in a single adjudication[.]"

{¶10} In January 2010, plaintiffs appealed the trial court's decision. In February 2011, we reversed and remanded the trial court's decision in *Estate of Mikulski v. Centerior Energy Corp.*, 8th Dist. Cuyahoga No. 94536, 2011-Ohio-696 ("the First Mikulski Appeal"). Foremost, we agreed with the trial court and found that

---

[4]In *Centerior II,* plaintiffs defined their class as "[a]ll common shareholders of * * * Centerior, and all beneficial owners of Centerior common shares, who in any year beginning in 1988 and continuing through 1998, inclusive, were issued a Form 1099-DIV or substitute therefor by Centerior or its agents reporting the tax status of distributions made by Centerior during any of the calendar years from 1987 through 1997, inclusive, and the communities comprised of them and their spouses, if any, excluding therefrom: (i) common shareholders and beneficial owners who sold such shares (which had by that time been converted to shares of FirstEnergy) on or after January 1, 2005; (ii) shareholders identified by a federal taxpayer identification number other than a social security number, excepting nominees which held shares of Centerior common stock for or on behalf of beneficial owners who are identified for tax purposes by a social security number; (iii) Defendants, their predecessors and successors; (iv) the officers and directors of Defendants, their predecessors and successors; (v) counsel of record in this action and their respective parents, spouses and children; and (vi) judicial officers who enter an order in this action and their respective parents, spouses and children." *Estate of Mikulski v. Centerior Energy Corp.*, 8th Dist. Cuyahoga No. 94536, 2011-Ohio-696, ¶ 4-5.

"liability could not be determined on a class-wide basis for the class as defined by appellants." *Id.* at ¶ 15. We explained that

> Centerior's misstatements could only have been harmful if they affected the plaintiffs' tax liability. Those class members who did not pay taxes in any relevant year in which they received a 1099-DIV from Centerior could not have suffered any actual damage from the misstatement. The individual question of whether the class member paid taxes and, if so, how Centerior's misstatement affected their tax liability, would predominate over common questions. The trial court did not abuse its discretion by finding that, for the class as defined by appellants, individual questions predominate.

*Id.* As a result, we found that the trial court did not abuse its discretion in denying class certification for lack of predominance. *Id.* at ¶ 16.

{¶11} In that same appeal, we also considered whether the trial court abused its discretion in failing to amend the proffered class. Specifically, plaintiffs argued that the trial court should have redefined the class to include "only those individuals who filed tax returns for any of the years in question[.]" *Id.* at ¶ 20. We found that it was "unclear" if that amendment would "cure the predominance defect and preserve Centerior's due process rights." *Id.* We found that "a redefinition of the class could resolve the predominance problem because the fact of damage could be shown on a class-wide basis, leaving only the amount of damages to be determined." *Id.* We therefore remanded the case "[b]ecause the record is unclear regarding [plaintiffs'] assertion that the fact of damage can be demonstrated simply by showing that a putative class member filed a tax return in any given year[.]" *Id.* at ¶ 21.

{¶12} In April 2015, however, plaintiffs voluntarily dismissed their claims without prejudice in *Centerior II*.

{¶13} While *Centerior II* was on appeal, *Centerior I*, the instant case, proceeded in the lower court.   In July 2013, the trial court granted plaintiffs' leave to file a second amended complaint, which amended their class definition as follows (amendments italicized):

> All common shareholders of [Centerior], and all beneficial owners of Centerior common shares, who in *any year beginning in 1987 and continuing through 1994,* inclusive, were issued a Form 1099-DIV or substitute therefor by Centerior or its agents reporting the tax status of distributions made by Centerior during any of the calendar years of *1986 through 1993*, inclusive, *and who paid a state or federal income tax for that year*, and the communities comprised of them and their spouses, if any, excluding therefrom:
>
> (i)     common shareholders and beneficial owners who sold such shares (which had by that time been converted to shares of FirstEnergy) on or after January 1, *2010*;
>
> (ii)    shareholders identified by a federal taxpayer identification number other than a social security number, excepting nominees which held shares of Centerior common stock for or on behalf of beneficial owners who are identified for tax purposes by a social security number;
>
> (iii)   Defendants, their predecessors and successors;
>
> (iv)    the officers and directors of Defendants, their predecessors and successors;
>
> (v)     Counsel of record in this action and their respective parents, spouses and children; and
>
> (vi)    *any* judicial *officer* who *enters* an order in this action and their respective parents, spouses, and children.

The amended class definition "expand[ed] the same claims originally brought against Defendants for 1986 to the subsequent years 1987 through 1993[.]"[5]

---

[5]  Plaintiffs requested leave to file a second amended complaint in October 2002.

{¶14} The same day, the trial court also granted plaintiffs' motion for class certification in part. Considering *Centerior II* and the holding in the First Mikulski Appeal, the trial court found that plaintiffs satisfied the identifiability, membership, numerosity, commonality, typicality, and adequacy requirements under Civ.R. 23(A). The trial court then ordered the parties to brief the "final two remaining requisite criteria for class certification — predominance and superiority." The trial court concluded its entry, stating,

> Bearing in mind the Eighth District's instructions that "defining the class to include only those individuals who filed a tax return in any of the given years would appear to solve the predominance problem if this was indicative of injury," *Estate of Mikulski v. Centerior Energy Corp.*, 8th Dist. Cuyahoga No. 94536 (Feb. 17, 2011), at ¶ 21, because, as the Court explained, if "any individuals who filed a return in any of the included years would suffer some damages," then restricting the Class to such individuals "could resolve the predominance problem because the fact of damage could be shown on a class-wide basis," *id.* at ¶ 20, the Court specifically directs the parties to address whether (and, if so, how) the definition of the Class asserted in this action may be further amended to satisfy those criteria. *See*, *e.g.,* Plaintiff's Second Notice of Amended Class Definition filed Oct. 21, 2002.

{¶15} The parties both filed briefs addressing the two remaining class-certification prerequisites. In their brief, plaintiffs stated that those prerequisites "are satisfied by restricting the class to shareholders actually damaged by Centerior's misrepresentations. Restricting the class to shareholders actually damaged by Centerior's misrepresentations is accomplished by defining the class to include *only those shareholders who paid taxes*." (Emphasis added.)

{¶16} In January 2015, plaintiffs filed a revised class definition, that they stated "fulfill[ed] the Court of Appeals' instructions for satisfying the remaining two class certification requisites — predominance and superiority — set forth in *Estate of*

*Mikulski v. Centerior Energy Corp.*, 8th Dist. Cuyahoga No. 94536, 2011-Ohio-696."

Plaintiffs' motion defined the class as (changes italicized):

> All common shareholders of [Centerior] and all beneficial owners of Centerior common shares, *from April 1986 through December 1993*, inclusive, who were issued, in any calendar year beginning in 1987 and continuing through 1994, inclusive, a Form 1099-DIV or substitute therefor by Centerior or its agents reporting the tax status of distributions made by Centerior during any of the calendar years from 1986 through 1993, inclusive, and the communities comprised of them and their spouses, if any, excluding therefrom:
>
> (a) *Registered* shareholders identified by a federal taxpayer identification number other than a social security number, excepting nominees which held shares of Centerior common stock for or on behalf of beneficial owners who are identified for tax purposes by a social security number;
>
> (b) Defendants, their predecessors and successors;
>
> (c) The officers and directors of Defendants, their predecessors and successors;
>
> (d) Counsel of record in this action and their respective parents, spouses and children; and
>
> (e) Judicial officers who enter an order in this action and their respective parents, spouses and children.[6]

Plaintiffs' motion also defined a newly added subclass, which included

> All members of the Class who were issued, in any of the calendar years 1987, 1992, 1993 or 1994, a Form 1099-DIV or substitute therefor by Centerior or its agents reporting the tax status of distributions made by Centerior during any of the calendar years 1986, 1991, 1992 or 1993, and who paid a state or federal income tax for any such year, excluding therefrom common shareholders and beneficial owners who sold such shares during the three full tax-reporting years immediately preceding the date of the entry of the Court's ruling certifying the Class (which had by that time been converted to shares of FirstEnergy Corp.), that is,

---

[6] The amended class definition omitted the following from the previous definition: "(i) common shareholders and beneficial owners who sold such shares (which had by that time been converted to shares of First Energy) on or after January 1, 2010[.]"

on or after [here insert the date corresponding to the full three-reporting-year exclusion].[7]

Plaintiffs stated that they added the Subclass "in response to the opinion and remand instructions of the Eighth District Court of Appeals[.]"

**{¶17}** In addition to the revised definitions, plaintiffs requested the "equitable remedy of disgorgement of the benefits Defendants received as the result of the misconduct." In a supplemental briefing to that motion, plaintiffs also for the first time sought certification under Civ.R. 23(B)(1)(a) and 23(B)(2), which were not pleaded in their second amended complaint.

**{¶18}** In October 2015, defendants moved to strike plaintiffs' revised class definition, but the trial court denied defendants' motion.

**{¶19}** In April 2017, the parties presented oral arguments to the trial court concerning class certification. Both parties also submitted proposed findings of fact and conclusions of law concerning class certification. The trial court denied defendants' request for an evidentiary hearing related to class certification.

### B. The Trial Court Certifies Plaintiffs' Proposed Class

**{¶20}** In March 2018, the trial court adopted plaintiffs' proposed findings of fact and conclusions of law. In the trial court's entry, it found that the Shareholder Class and Subclass satisfied the Civ.R. 23(A) requirements. It noted that defendants did not "challenge Plaintiffs' proof of the membership, numerosity, or commonality requirements, nor [did] they challenge the adequacy of Plaintiffs' counsel."

**{¶21}** The trial court next addressed Civ.R. 23(B). It found that the Shareholder

---

[7]For ease of discussion, we will refer to the class as the "Shareholder Class" and the

Class was certifiable under Civ.R. 23(B)(1)(a), (2), and (3) and that the Subclass was certifiable under Civ.R. 23(B)(3). The trial court found that plaintiffs "raised several common questions applying to all members of the Shareholder Class":

> i.     Whether Centerior had a fiduciary and/or statutory duty to provide its shareholders with truthful and accurate information during the years in question;
>
> ii.     Whether Centerior misrepresented the tax status of cash distributions on Forms 1099-DIV issued during the years in question in violation of its fiduciary and/or statutory duties and in breach of its contract with Shareholders;
>
> iii.     Whether receiving a false and fraudulent Form 1099-DIV from a fiduciary is a sufficient injury to establish claims of fraudulent misrepresentation and/or breach of contract under Ohio law. If the answer to that question is "no," as Defendants contend, then such claims would fail on their merits, but that prospect as a merits determination does not defeat class certification at this stage of the case but rather demonstrates the class-wide predominance of such a question;
>
> iv.     Whether an accounting of Defendants' E&P books and records is an appropriate remedy for Centerior's alleged wrongdoing; and
>
> v.     Whether disgorgement of any benefits Defendants obtained as a result of Centerior's alleged wrongdoing is an appropriate remedy.

{¶22} The trial court agreed with plaintiffs that "[t]he injury allegedly suffered by all [Shareholder] Class members in common * * * is Centerior's alleged failure to make truthful and accurate disclosures mandated by law" and that that failure, "if true, constitutes injury even without monetary loss having been suffered * * * because the inability to obtain information itself can constitute an injury."

---

subclass as the "Subclass" throughout the remainder of this opinion.

**{¶23}** The trial court found that the Shareholder Class and the Subclass both suffered that "misrepresentation injury" and "[t]he only difference between the Shareholder Class and the Taxpayer Subclass is that the Subclass members allegedly suffered the additional injury of overpaying their federal and state income taxes as a result."

**{¶24}** As to the Subclass, the trial court stated that the Subclass "shares the same common issues as the Shareholder Class" and that those issues predominate over any "purely individual issues[.]" It noted that the Subclass "presents additional questions common to the Subclass but not to the [Shareholder] Class":

(i)    Whether overpaying taxes based on allegedly false and fraudulent Forms 1099-DIV * * * is sufficient injury to establish * * * fraudulent misrepresentation and breach of contract[;] and

(ii)   Whether the damages from overpayment of state and federal income taxes by the members of the Subclass can be calculated using the class-wide formula and methodology used by Plaintiffs' experts.

**{¶25}** It is from this judgment that defendants now appeal.

## II. Law and Analysis

### A. Standard of Review

**{¶26}** Trial courts have broad discretion in determining whether a class action may be maintained, and we will not disturb that determination unless a party shows that the trial court abused its discretion. *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200, 509 N.E.2d 1249 (1987). "This 'is grounded not in credibility assessment, but in the trial court's special expertise and familiarity with the case-management problems and its inherent power to manage its own docket.'" *Cantlin v. Smythe Cramer Co.*, 8th Dist.

Cuyahoga No. 106697, 2018-Ohio-4607, ¶ 15, quoting *Gattozzi v. Sheehan*, 8th Dist. Cuyahoga No. 103246, 2016-Ohio-5230, 57 N.E.3d 1187. A trial court abuses its discretion when its decision was unreasonable, arbitrary, or unconscionable. *Wilson v. Brush Wellman, Inc.*, 103 Ohio St.3d 538, 2004-Ohio-5847, 817 N.E.2d 59, ¶ 30.

**{¶27}** A trial court's discretion in deciding whether to certify a class action, however, is not unlimited, and must comply with the requirements and framework set forth in Civ.R. 23. *Lingo v. State*, 8th Dist. Cuyahoga No. 97537, 2012-Ohio-2391, ¶ 16. In fact, a trial court must "carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied." *Hamilton v. Ohio Savs. Bank*, 82 Ohio St.3d 67, 70, 694 N.E.2d 442 (1998).

### B. Class Action Certification

**{¶28}** The class action is an invention of equity. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Class certification in Ohio is based upon Rule 23 of the Ohio Rules of Civil Procedure, which is identical to Rule 23 of the Federal Rules of Civil Procedure.

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Ritt v. Billy Blanks Ents.*, 171 Ohio App.3d 204, 2007-Ohio-1695, 870 N.E.2d 212, ¶ 32-33 (8th Dist.), citing *Amchem*.

**{¶29}** Civ.R. 23 sets forth seven requirements for class certification:

(1) an identifiable class must exist and the definition of the class must be unambiguous;

(2) the named representatives must be members of the class;

(3) the class must be so numerous that joinder of all members is impracticable;

(4) there must be questions of law or fact common to the class;

(5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class;

(6) the representative parties must be typical of the claims or defenses of the class; and

(7) one of the three Civ.R. 23(B) requirements must be met.

*Hamilton* at 71. Civ.R. 23(B) provides that a class action may be maintained if Civ.R. 23(A) is satisfied and,

(1)(a) prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; * * *

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**{¶30}** "The party seeking to maintain a class action has the burden of demonstrating that all factual and legal prerequisites to class certification have been met." *Linn v. Roto-Rooter, Inc.*, 8th Dist. Cuyahoga No. 82657, 2004-Ohio-2559, citing *Gannon v. Cleveland*, 13 Ohio App.3d 334, 469 N.E.2d 1045 (8th Dist.1984).

"Before certifying the class, the trial court must find that the party seeking certification has proven by a preponderance of the evidence that each of the seven requirements for class certification are met." *Ford Motor Credit Co. v. Agrawal*, 8th Dist. Cuyahoga No. 103667, 2016-Ohio-5928, ¶ 11, citing *Ritt*.

{¶31} Further, "[w]hen a trial court considers a motion to certify a class, it must assume the truth of the allegations in the complaint, without considering the merits of those allegations and claims." *Nagel v. Huntington Natl. Bank*, 179 Ohio App.3d 126, 2008-Ohio-5741, 900 N.E.2d 1060, ¶ 10 (8th Dist.). The only examination a trial court may perform as to the underlying claims when determining class certification is to determine "whether common questions exist and predominate[.]" *Id.* at ¶ 12, citing *George v. Ohio Dept. of Human Servs.*, 145 Ohio App.3d 681, 763 N.E.2d 1261 (10th Dist.2001). However, the class-certification analysis "will frequently 'overlap with the merits of the plaintiff's underlying claim' because a 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Comcast Corp. v. Behrend,* 569 U.S. 27, 27-28, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013), quoting *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

{¶32} "'Any doubts a trial court may have as to whether the elements of the class certification have been met should be resolved in favor of upholding the class[.]'" *Nagel* at ¶ 10, quoting *Rimedio v. Summacare*, 172 Ohio App.3d 639, 2007-Ohio-3244, 876 N.E.2d 986 (9th Dist.).

{¶33} With these principles in mind, we will address defendants' assignments of error, although out of order for ease of discussion and disposition.

**1. Our 2011 Decision and Remand in *Estate of Mikulski v. Centerior Energy Corp.*, 8th Dist. Cuyahoga No. 94536, 2011-Ohio-696, was not a Mandate.**

{¶34} In their second assignment of error, defendants argue that the trial court erred in considering and lacked the jurisdiction to certify the Shareholder Class because the trial court failed to follow our decision in the First Mikulski Appeal concerning *Centerior II*. Specifically, defendants argue that our previous decision "mandated" plaintiffs "to amend their class definition to include only those who overpaid their taxes" and that the trial court did not follow that mandate and instead "improperly permitted Plaintiffs to reinvent their case, adding a new disgorgement-based Class that asserts a new injury, requests new remedies, and seeks certification under additional prongs of Rule 23(B)." We disagree.

{¶35} Defendants' arguments rest on principles related to "the mandate rule" and the law-of-the-case doctrine. The mandate rule is "a corollary of the law-of-the-case doctrine" and "requires a [trial] court on remand to effect [an appellate court's] mandate and to do nothing else." *United States v. Castillo*, 179 F.3d 321, 329 (5th Cir.1999). Relatedly, the law-of-the case doctrine "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Hawley v. Ritley*, 35 Ohio St.3d 157, 160, 519 N.E.2d 390 (1988). The doctrine "is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of the superior and inferior courts as designed by the Ohio Constitution." *Id.* To meet those goals, the doctrine "compel[s] trial courts to follow the mandates of reviewing courts[,]" and trial courts are "without

authority to extend or vary the mandate given." *Id.* As a result, "where at a rehearing following a remand a trial court is confronted with *substantially the same facts and issues* as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination." (Emphasis added.) *Id.*

{¶36} In support of their argument, defendants cite to a number of cases — *Hawley*; *State ex rel. Heck v. Kessler*, 72 Ohio St.3d 98, 647 N.E.2d 792 (1995); *Baumer v. United States*, 685 F.2d 1318 (11th Cir.1982); and *Castillo* — discussing the "mandate rule" and the "law of the case doctrine." All of those cases are distinguishable from the instant matter because none of them involved the certification of a class action.

{¶37} We find that one of our previous cases, *Konarzewski v. Ganley, Inc.*, 2017-Ohio-4297, 82 N.E.3d 1191 (8th Dist.), is more analogous instead because it also concerned a class action and an argument that a prior decision by our court controlled the ongoing proceedings in the trial court. We rejected that argument in *Konarzewski*, stating,

> [W]e reject any contention by plaintiffs that we are somehow bound by the determinations made in *Konarzewski I*, 8th Dist. Cuyahoga No. 92623, 2009-Ohio-5827. In that appeal, the Civ.R. 23 requirements were considered with regard to the proposed class then before the court. That proposed class was never certified, nor was a mandate issued for class certification. Rather, the case was remanded for modification of the class definition, albeit to comport with the requirement of actual damages found in R.C. 1345.09(B). That decision has no effect upon the review of a subsequently certified class. We find nothing in the doctrine of the law of the case that would preclude a court from revisiting the class certification requirements with regard to a modified or revised class definition. Class certification cannot be granted unless all requirements for class certification have been met, and the court is required to conduct a rigorous analysis in making its determination. *Cullen* [*v. State Farm Mut. Auto Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614] at ¶ 16.

*Id.* at ¶ 10.

{¶38} We reach the same conclusion in this case. Foremost, we never definitively ruled on class certification in the First Mikulski Appeal. Instead, we stated, "a redefinition of the class could resolve the predominance problem because the fact of damage can be demonstrated simply by showing that a putative class member filed a tax return in any given year, this cause must be remanded to the trial court for *further consideration*." (Emphasis added.) *Mikulski*, 8th Dist. Cuyahoga No. 94536, 2011-Ohio-696, at ¶ 21. The only thing that language "mandated" was for the trial court to further consider the predominance requirement. We did not affirm or reverse any other part of the trial court's decision or findings as to the class-certification prerequisites, and we did not state that the trial court could not reconsider a newly proposed class of plaintiffs.

{¶39} Further, the trial court was not confronted with the same facts and issues that our court reviewed in the First Mikulski Appeal. *See Baumer*, 685 F.2d 1318, at 1320, quoting *White v. Murtha*, 377 F.2d 428 (5th Cir.1967) ("'[A] decision of a legal issue or issues by an appellate court * * * must be followed in all subsequent proceedings * * * unless the evidence on a subsequent trial was substantially different[.]'"). After remanding the issue, the parties engaged in several years of discovery and motion practice, which included the filing of multiple expert reports. The trial court then followed our instructions on remand and upheld its responsibility of performing a "rigorous analysis" of the newly presented evidence, factual disputes, and class-certification prerequisites. *Cullen* at paragraph one of the syllabus. Therefore,

while the case still has precedential value, it is not a mandate that deprived the trial court of jurisdiction as defendants argue.

{¶40} Accordingly, we overrule defendants' second assignment of error.

**2. The Subclass Should Not Be Certified Because Determining Whether All Members of the Subclass Were Injured Would Result in Individual Inquiries That Would Not Satisfy the Predominance Requirement.**

{¶41} In their first assignment of error, defendants argue that the trial court erred when it certified the Subclass under Civ.R. 23(B)(3).[8]

{¶42} Class certification under Civ.R. 23(B)(3) is appropriate when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The common questions of law or fact "must present a significant aspect of the case * * * [and] must be capable of resolution for all members in a single adjudication." *Marks*, 31 Ohio St.3d at 204, 509 N.E.2d 1249. To put simply, Civ.R. 23(B)(3) has two elements: predominance and superiority.

{¶43} Civ.R. 23(B)(3) lists factors that are pertinent to a finding of predominance:

(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

---

[8]Civ.R. 23(C)(5) allows a class to "be divided into subclasses that are treated as a class[.]"

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(d) the difficulties likely to be encountered in the management of a class action.

"The list in the rule is not exhaustive, so other pertinent factors may be considered."

*State ex rel. Davis v. Pub. Emp. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 28.

{¶44} As we recognized before, there are

a number of standards that the courts have used to determine predominance: the substantive elements of class members' claims require the same proof for each class member; the proposed class is bound together by a mutual interest in resolving common questions more than it is divided by individual interests; the resolution of an issue common to the class would significantly advance the litigation; one or more common issues constitute significant parts of each class member's individual cases; the common questions are central to all of the members' claims; and the same theory of liability is asserted by or against all class members, and all defendants raise the same basic defenses.

*Westgate Ford Truck Sales v. Ford Motor Co.*, 8th Dist. Cuyahoga No. 86596, 2007-Ohio-4013, ¶ 80, citing 5 Moore, *Federal Practice* (3d Ed.1977).

{¶45} Nevertheless, "'a proposed class action requiring the court to determine individualized fact of damages does not meet the predominance standards of Rule 23(b)(3).'" *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, 49 N.E.3d 1224, ¶ 34, quoting *Gonzales v. Comcast Corp.*, E.D.Cal. No. 10-cv-01010-LJO-BAM, 2012 U.S. Dist. LEXIS 196 (Jan. 3, 2012). "If the class plaintiff fails to establish that all of the class members were damaged (notwithstanding questions regarding the individual damages calculations for each class members), there is no showing of predominance under Civ.R. 23(b)(3)." *Id.* at ¶ 35.

**{¶46}** In *Felix*, the Ohio Supreme Court vacated the trial court's order certifying the plaintiffs' proposed class of consumers who purchased vehicles from particular car dealerships and signed purchase contracts that allegedly contained an unconscionable arbitration clause. The Ohio Supreme Court held that

> the class, as certified, fails because there is no showing that all class members suffered an injury in fact. The broadly defined class encompasses consumers who purchased a vehicle at Ganley through a purchase contract that contained the unconscionable arbitration provision. But there is absolutely no showing that all of the consumers who purchased vehicles through a contract with the offensive arbitration provision were injured by it or suffered any damages.

*Id.* at ¶ 37.

**{¶47}** There are also a number of decisions from our court that have recognized a plaintiff-class's failure to satisfy the predominance requirement. In *Hoang v. E\*trade Group*, 151 Ohio App.3d 363, 2003-Ohio-301, 784 N.E.2d 151 (8th Dist.), we reversed the trial court's order granting class certification, stating,

> Although all of the plaintiffs' claims arise out of the same Customer Agreement and a "common course of conduct," the trial court ignores the fact that liability as to each individual plaintiff's claims cannot be established in a single adjudication. Each of the plaintiff's claims requires proof of actual injury caused by the alleged wrongdoing before liability can be established.

*Id.* at ¶ 19. We recognized that while "some of the plaintiffs have suffered damages as a result of E\*Trade's system interruptions[,] * * * others have not." *Id.* at ¶ 24. We found that "[t]he trading of customers who were impacted by the system interruptions would have to be analyzed on a 'trade by trade' basis to determine what price the customer might have obtained had the system interruption not occurred" and that that analysis would be

complex because it requires consideration of each individual transaction, other transactions in the same security that occurred in the market, as well as the market conditions at the time, including the number of orders waiting to be executed in the market, the size and type of those orders, and other factors.

*Id.* at ¶ 25. We also noted that "some customers who were impacted by the system interruptions may have actually benefitted from the interruption, in which case they have no claims." *Id.*

**{¶48}** Similarly, in *Agrawal*, 8th Dist. Cuyahoga No. 103667, 2016-Ohio-5928, we reversed the trial court's certification of the plaintiffs' class of car lessees, finding that class certification was "barred by the requirement that Agrawal demonstrate through common evidence that all class members were in fact injured by Ford Credit's actions" as the predominance requirement under Civ.R. 23(B)(3) requires. *Id.* at ¶ 27. We found that "[i]ndividualized inquiry is * * * necessary to determine whether these lessees suffered any injury, even if the dealer imposed an incorrect inspection standard." *Id.* at ¶ 30. The individualized inquiry was necessary because a number of factors, such as the different assessments from and labor rates between the auction house and dealer, would need to be analyzed "to determine whether the lessee was actually injured under Agrawal's theory." *Id.* at ¶ 32. We concluded that "determining the 'fact of injury' under Agrawal's theories requires examination of the VCRs for every vehicle; it is not susceptible to common class[-]wide proof, but requires highly individualized inquiry." *Id.* at ¶ 34.

**{¶49}** Plaintiffs argue that *Hoang* is distinguishable because unlike the plaintiffs in *Hoang*, they can show "injury by common evidence[,]" namely, the Forms

1099-DIV. Plaintiffs also cite to *Ritt*, 171 Ohio App.3d 204, 2007-Ohio-1695, 870 N.E.2d 212, in which this court distinguished our holding in *Hoang*. In *Ritt*, we stated,

> The case at hand is not the complex case this court was faced with in *Hoang*. Rather, the facts show that when persons called a toll-free number to purchase a Tae-Bo video, they were all read a scripted, thirty second upsell, emphasizing that they were being given a "RISK FREE" membership, for which they "WON'T BE BILLED." Subsequently, their credit cards were charged for an annual membership. An individualized inquiry is not necessary to determine liability here as it was in *Hoang.*

*Id.* at ¶ 60.

{¶50} We find this case is more akin to *Hoang* and *Agrawal* than it is to *Ritt.* Like *Hoang* and *Agrawal*, there is no common proof that will establish injury for each class member. The Forms 1099-DIV that Centerior distributed to its shareholders in the relevant years are not sufficient alone to show a class-wide injury. Instead, to determine whether a person was injured and can be included in the Subclass, a court would have to apply and consider a number of factors, such as the individual's tax-rate bracket, how the individual filed (individually or jointly), the amount of other dividends the member received from Centerior, the length of time that the member held stock in Centerior, the type of stock ownership, and the amount of state income taxes paid in one year and deductible of federal income taxes that or the next year. Unlike *Ritt*, the facts of this case do not in any way suggest that all of the plaintiffs received identical information, filed identical tax returns, and paid identical amounts to the Internal Revenue Service. Further, like *Hoang*, the application and consideration of those factors could result in a finding that a particular member was not injured, but instead benefitted from Centerior's alleged misrepresentations. Applying United States federal

income tax law to each member of the Subclass to determine whether that member was actually injured (i.e., overpaid his or her taxes in the relevant years) requires an individualized inquiry that fails to satisfy the predominance requirement under Civ.R. 23(B)(3).

{¶51} The Subclass fails to fix the issues that we recognized in the First Mikulski Appeal. There, we stated, "[t]he individual question of whether the class member paid taxes and, if so, how Centerior's misstatement affected their tax liability, would predominate over common questions." *Mikulski*, 8th Dist. Cuyahoga No. 94536, 2011-Ohio-696, at ¶ 15. While we remanded the case for the parties to "cure the predominance defect[,]" plaintiffs have once again failed to cure that defect. The issue of how the alleged misstatement affected each individual's tax liability still predominates over the questions common to the Subclass members.

{¶52} Quoting the trial court's order granting class certification, plaintiffs also argue that "'the fact that some Subclass members may have zero dollars of damages does not prevent certification.'" In setting forth that proposition, the trial court cited to *Musial Offices, Ltd. v. Cuyahoga*, 8th Dist. Cuyahoga No. 99781, 2014-Ohio-602, and stated that *Musial* "revers[ed] the denial of class certification and [held] that predominance was satisfied even though some members of a taxpayer class may not have actually overpaid their taxes or may not be entitled to recover any tax overpayments." Trial court's order, p. 33. After a thorough review, we find that *Musial* said nothing of the sort. The paragraph in *Musial* that the trial court cites for that proposition states,

Furthermore, the class members are not disputing the facts individual to each member, such as when the taxpayer was notified of a reduction, when each complaint against valuation was filed, or whether the Board's reduced valuation was properly reflected in the subsequent tax bills. These facts are readily ascertainable from the county's Fiscal Officer's computer system. Even each plaintiff's damages are easily identified without litigation. Since there is no need to litigate these facts, there would be no need for mini trials to establish them. In this case, common legal issues that relate to the county's liability to the class members predominate, even though some individualized inquiry is required to determine damages. Therefore, Musial satisfied the commonality and predominance requirements of both Civ.R. 23(A)(2) and 23(B)(3).

*Id.* at ¶ 36. The above passage instead shows that because each plaintiff's damages could be calculated with relative ease and litigation over each plaintiff's damages was unnecessary, we found an individualized inquiry was not necessary. That passage did not say or hold, however, that class certification was proper even though some members of the class did not actually overpay their taxes. Further, *Musial* is clearly distinguishable from this case as, here, individualized inquiry will be necessary to determine whether an individual was damaged by Centerior's alleged misreporting and predominates over issues common to the Subclass.

{¶53} Therefore, we find that the Subclass fails to satisfy Civ.R. 23(B)(3)'s predominance requirement, and we sustain defendants' first assignment of error.

### 3. The Shareholder Class Should Not Be Certified Because Shareholder Class Members Did Not Suffer an Injury and, Therefore, Lack Standing.

{¶54} In their third, fourth, fifth, and sixth assignments of error, defendants argue that the trial court erred in certifying the class because the class members lack standing because they cannot show they suffered an injury recognized by Ohio case law and the Shareholder Class cannot satisfy any of the Civ.R. 23(B) prerequisites.

{¶55} We will turn to the issue of standing first, because we find it dispositive of the remaining assignments of error concerning the Shareholder Class. Defendants argue that plaintiffs and "absent class members lack standing because they did not suffer a concrete injury." Defendants contest the trial court's finding that "receiving inaccurate Forms 1099, in supposed derogation of the federal tax code and a 'fiduciary relationship' between a corporation and its shareholders, constitutes a concrete 'injury-in-fact.'" They argue that "the mere failure to receive accurate information, even information mandated by law, is not injury-in-fact sufficient to confer standing." They also point out that "[t]he overpayment of taxes is the only alleged concrete injury resulting from the statutory violation, but the Class does not allege that injury; only the Subclass does."

{¶56} In response, plaintiffs argue that they "have suffered several forms of injury, including informational injury, increased tax liability (not limited to tax overpayments), and monetary harm in the form of the overpayment of their income taxes." They also argue that the "standing requirement only applies to the named Plaintiffs, not to absentee class members." Finally, plaintiffs argue that "Centerior had a contractual, fiduciary and statutory duty to provide only truthful and accurate information to Shareholders on the Forms 1099-DIV[,]" and the breach of that duty standing alone is enough to constitute an injury and confer standing on the class members.

{¶57} Foremost, a review of the record shows that the trial court only certified the class based on the informational injury plaintiffs alleged. In fact, the trial court's order granting class certification included the following statements:

Page 12: Centerior's alleged failure to provide accurate dividend statements, as statutorily mandated by 26 U.S.C. 6042(c)(2) and as required by Centerior's fiduciary relationship vis-a-vis every Class member, constitutes actionable injury-in-fact as to each Class member[.]

Pages 14-15: [T]his misrepresentation injury was suffered by both the Class and the Subclass. The only difference between the Shareholder Class and the Taxpayer Subclass is that the Subclass members allegedly suffered the additional injury of overpaying their federal and state incomes taxes as a result.

Page 26: Plaintiffs maintain that predominance is satisfied because they have alleged an injury common to the Class members (misrepresentations regarding the nature of shareholder distributions and the E&P accounts of the corporation) demonstrated by proof common to the Class members (Forms 1099-DIV and Centerior accounting records) for which they seek common, class-wide remedy in the form of injunctive relief (accounting and disgorgement).

Page 27: The injury allegedly suffered by all Class members in common, that can be proved by the common evidence of the Forms 1099-DIV they were issued, is Centerior alleged failure to make truthful and accurate disclosures mandated by law. Despite Defendants arguments to the contrary, this allegation, if true, constitutes injury even without monetary loss having been suffered by the Class members because the inability to obtain information itself can constitute an injury.

Page 28: Here, whether the breach of Centerior fiduciary and statutory duties to tell the truth is an injury sufficient to sustain claim for fraudulent misrepresentation or breach of contract is question common to the Class, and Plaintiffs have demonstrated they will be able to introduce class-wide proof of the existence of such an injury.

{¶58} It is clear from those statements in the trial court's order that it certified the Shareholder Class based on its alleged "informational injury" and that only the Subclass alleged the overpayment-of-taxes injury. Therefore, the trial court did not certify the Shareholder Class based on the injuries of increased tax liability and monetary harm as plaintiffs allege, and as a result, we will only review whether the

informational injury that plaintiffs allege is sufficient to confer standing for the Shareholder Class.

**{¶59}** To have standing, plaintiffs must show that they have suffered an injury that is fairly traceable to the defendants' allegedly unlawful conduct and that is likely to be redressed by the requested relief. *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "'Perhaps the most basic requirement to bringing a lawsuit is that the plaintiff suffer some injury. Apart from a showing of wrongful conduct and causation, proof of actual harm to the plaintiff has been an indispensable part of civil actions.'" *Felix*, 145 Ohio St.3d 329, 2015-Ohio-3430, 49 N.E.3d 1224, at ¶ 36, quoting Schwartz & Silverman, *Common Sense Constr. of Consumer Protection Acts*, 54 U.Kan.L.Rev. 1 (2005).

**{¶60}** "The fact that a plaintiff seeks to bring a class action does not change this standing requirement. Individual standing is a threshold to all actions, including class actions." *Woods v. Oak Hill Community Med. Ctr.*, 134 Ohio App.3d 261, 269, 730 N.E.2d 1037 (4th Dist.1999), citing *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir.1998). Only the representatives of the class need to have proper standing, which requires those representatives to "possess the same interest and suffer the same injury shared by all members of the class that [they seek] to represent." *Hamilton*, 82 Ohio St.3d at 74, 694 N.E.2d 442.

> Plaintiffs in class action suits must demonstrate that they can prove, through common evidence, that all class members were in fact injured by the defendant's actions. * * * Although plaintiffs at the class-certification stage need not demonstrate through common evidence the precise amount of damages incurred by each class member, * * *

they must adduce common evidence that shows all class members suffered *some* injury.

*Felix* at ¶ 33.

{¶61} While plaintiffs allege and the trial court found that Shareholder Class members suffered an "informational" injury sufficient to confer standing, we find that such an injury has no support in case law and is not sufficient to constitute an injury for standing or class-certification purposes.

{¶62} Foremost, the elements of breach of fiduciary duty show that the breach of the duty cannot constitute the injury itself; the breach of duty and injury are two separate elements. We have recognized the fact that the breach of a fiduciary duty and injury are separate elements on many occasions. *See Dueck v. Clifton Club Co.*, 8th Dist. Cuyahoga Nos. 103868 and 103888, 2017-Ohio-7161, ¶ 70, quoting *Scanlon v. Scanlon*, 2013-Ohio-2694, 993 N.E.2d 855 (8th Dist.) ("'To prove a breach of fiduciary duty, appellants must demonstrate: (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom.'"). For example, in *Hardwood v. Pappas & Assocs.*, 8th Dist. Cuyahoga No. 84761, 2005-Ohio-2442, we held that the plaintiff "failed to present any evidence that the alleged breaches of duty proximately caused him an injury" and affirmed the trial court's order granting a directed verdict to the defendant "because there [was] no evidence that the breach proximately caused injury." *Id.* at ¶ 26-27. *Compare Yackel v. Kay*, 95 Ohio App.3d 472, 482, 642 N.E.2d 1107 (8th Dist.1994) ("Yackel also presented evidence from which a reasonable jury could have concluded he suffered actual damages in the amount of $194,000 due to Kay's breach of fiduciary duty.").

{¶63} The requirement that there be an injury in addition to the breach of a fiduciary duty is not unique to our appellate district either. Many appellate districts have recognized that the misrepresentation or breach of duty itself is not the injury. *See Huffman v. Groff*, 4th Dist. Athens No. 10CA54, 2013-Ohio-222, ¶ 43 (affirming the trial court's dismissal of the plaintiff's claim for breach of fiduciary duty because "there [was] no evidence that Ray or the Hollar have suffered, or will suffer, any damages as a result of Roxanne's alleged misconduct."); *Kademian v. Marger*, 2d Dist. Montgomery No. 24256, 2012-Ohio-962, ¶ 64-66 ("[T]he appropriate consideration in breach of fiduciary duty is not whether the alleged wrongdoer benefitted — it is whether an injury proximately resulted from the breach. * * * [T]he focus should be on the damages sustained by Kademian as a result of Marger's alleged breach of fiduciary duty."); *KMA Acquisitions Corp. v. Coleman*, 10th Dist. Franklin No. 92AP-1635, 1993 Ohio App. LEXIS 5108, 7 (Oct. 19, 1993) (affirming dismissal of the case because the plaintiff's complaint failed "to allege any injury to plaintiff"). *Compare Camp St. Mary's Assoc. of the W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes*, 176 Ohio App.3d 54, 2008-Ohio-1490, 889 N.E.2d 1066, ¶ 19 (3d Dist.) ("[T]his cause of action arises based on the parties' actions when Otterbein Homes allegedly made its representations to the Association and the land and money were transferred to Otterbein Homes. Should the Association prove its claims, it will have suffered injury, and therefore, it has individual standing to bring a claim for breach of fiduciary duty.").

{¶64} Even further, to hold that an informational injury is concrete enough to confer standing would create a conflict with our previous decision in *Mikulski*, 8th Dist.

Cuyahoga No. 94536, 2011-Ohio-696. There, we stated that "Centerior's misstatements could only have been harmful if they affected the plaintiffs' tax liability. Those class members who did not pay taxes in any relevant year in which they received a 1099-DIV from Centerior could not have suffered any actual damage from the misstatement[.]" *Id.* at ¶ 15. Put simply, we recognized that the overpayment of taxes, not the misstatement, was the injury. To find that the misstatement was the injury in this case would create a conflict of law in our appellate district.

{¶65} Plaintiffs cite to case law from Ohio and federal courts in support of their argument that the misrepresentation is the injury. We find that the Ohio cases to which plaintiffs cite — *Strickler v. First Ohio Banc & Lending, Inc.*, Lorain C.P. No. 07-CV-151964 (Sept. 13, 2010 and Oct. 12, 2011); *Myer v. Preferred Credit, Inc.*, 117 Ohio Misc.2d 8, 766 N.E.2d 612 (C.P. 2001); *Hill v. Moneytree*, Lorain C.P. No. 06-CV-148815 (Jan. 11, 2012) — are both noncontrolling and distinguishable as they concern broker disclosure requirements specifically set forth by statutes. *Myer* concerned a "secret profit" rule or secret fee-splitting agreement between brokers. *Id.* at ¶ 32. *Strickler* and *Hill* both concerned a bank's alleged violation of the Ohio Mortgage Broker Act and R.C. Chapter 1322, which sets forth disclosure obligations for mortgage brokers. Further, it appears that *Hill* was subsequently overturned on appeal to the Ninth District, which reversed and remanded the trial court's decision because it found the trial court improperly reviewed the merits of the class action instead of the appropriateness of class certification. *Hill v. Moneytree of Ohio Inc.*, 9th Dist. Summit No. 08CA009410, 2009-Ohio-4614, ¶ 13-14.

**{¶66}** We also find the federal jurisprudence cited by plaintiffs to be distinguishable. Plaintiffs cite *Fed. Elec. Comm. v. Akins*, 524 U.S. 11, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998); *Pub. Citizen v. United States Dept. of Justice*, 491 U.S. 440, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989); and *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), in support of their argument that deprivation of truthful information alone constitutes injury. They argue that those cases, which all concerned "the deprivation of a statutory right to receive truthful information," are similar to the instant case because "26 U.S.C. 6042(c)(2), which requires truthful disclosures on Forms 1099-DIV, is meant to protect shareholders from false information, especially given that shareholders are themselves subject to criminal liability for the incorrect information on their own tax returns[.]"

**{¶67}** In *Akins*, the court stated:

> The "injury in fact" that respondents have suffered consists of their inability to obtain information[.] * * * Respondents' injury consequently seems concrete and particular. Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute. *Public Citizen v. Department of Justice,* 491 U.S. 440, 449, 105 L.Ed.2d 377, 109 S.Ct. 2558 (1989) (failure to obtain information subject to disclosure under Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue"). *See also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374, 71 L.Ed.2d 214, 102 S.Ct. 1114 (1982) (deprivation of information about housing availability constitutes "specific injury" permitting standing).

*Id.* at 20.

**{¶68}** Like *Akins*, *Pub. Citizen* concerned the Federal Advisory Committee Act ("FACA"), a federal statute that required the American Bar Association ("ABA") Committee to "make its minutes, records, and reports available to the public." *Id.* at

syllabus. The appellants sued the committee after it refused the appellants' request for disclosure of the reports, and the committee alleged that the appellants lacked standing. The court found that

> refusal to permit appellants to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue. Our decisions interpreting the Freedom of Information Act have never suggested that those requesting information under it need show more than that they sought and were denied specific agency records.

*Id.* at 449.

{¶69} Likewise, in *Havens*, the Supreme Court recognized that a realty company's failure to provide "truthful housing information" to one of the respondents satisfied Article III's injury-in-fact requirement because Section 804 of the Fair Housing Act of 1968 (42 U.S.C.S. 3604) intended to guard against such discriminatory misrepresentations. *Id.* at 374-375. In other words, *Havens* concerned a plaintiff's statutory "enforceable right to truthful information concerning the availability of housing" under a federal statute that was designed to specifically protect against discriminatory representations. *Id.* at 374.

{¶70} Those federal cases are distinguishable from the instant case because the statutes in those cases were specifically meant to protect against the harm that the plaintiffs suffered. We find that plaintiffs' comparison to the tax code in the instant case is unlike the statutes in the federal cases because Congress did not set forth or imply a private cause of action under the tax code for misinformation alone. In fact, plaintiffs admitted in the proceedings below that they "are not relying on Centerior's violations of [the tax code] as the basis for their claims or recovery against Centerior"

and that "those provisions do not state or imply a private cause of action." *See "plaintiffs' supplemental brief in support of certification of the class and subclass identified in plaintiffs' revised class definition filed on January 28, 2015,"* filed October 11, 2016, at 26. Therefore, plaintiffs' class action is entirely distinguishable from the federal cases that they cite in support of their argument that their "informational injury" is sufficient to confer standing.

{¶71} Further, those cases were all decided before *Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), in which the Supreme Court found that an allegation that an alleged consumer reporting agency violated the Fair Credit Reporting Act by reporting inaccurate consumer information was insufficient to establish injury-in-fact because "not all inaccuracies cause harm or present any material risk of harm." *Id.* at 1550. While *Spokeo* did not expressly overturn *Akins, Pub. Citizen,* or *Havens*, it clarified the injury-in-fact requirement under Article III. *Id.* at syllabus. The court stated that while "[t]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact[, and] in such a case, a plaintiff need not allege any *additional* harm beyond the one identified by Congress[,]" a "bare procedural violation" is insufficient to satisfy Article III's injury requirement. *Id.*

{¶72} We find *Smith v. Bank of Am., N.A.*, 679 Fed. Appx. 549 (9th Cir.2017), cited by defendants to be on point. In *Smith,* which was decided post-*Spokeo*, the court affirmed the district court's dismissal of the plaintiffs' class action. The court found that the district court lacked subject matter jurisdiction over the case because the

plaintiffs did not satisfy Article III's standing requirements, particularly the injury-in-fact requirement. *Id.* at 550. The court stated:

> Plaintiffs fail to allege injury-in-fact via "an invasion of a legally protected interest which is * * * concrete and particularized" and "actual or imminent." *Id.* at 561[.] * * * Although Plaintiffs allege that Bank of America, N.A. ("BofA") provided them with a Form 1098 that did not comply with the requirements of 26 U.S.C. § 6050H, Plaintiffs do not allege that they filed erroneous tax returns in reliance on the allegedly erroneous form or received a smaller tax deduction as a result. Mere receipt of an erroneous form, without more, is insufficient to establish injury-in-fact. *See Gonzales v. Gorsuch*, 688 F.2d 1263, 1269 (9th Cir.1982); *see also Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549-50, 194 L. Ed. 2d 635 (2016). Because Plaintiffs failed to establish Article III standing, the district court lacked subject matter jurisdiction and was required to dismiss on that ground. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (rejecting the doctrine of hypothetical jurisdiction).

*Id.*

**{¶73}** We agree with the Ninth Circuit's reasoning in *Smith* and find that the Shareholder Class members' receipt of allegedly incorrect Forms 1099-DIV is not sufficient to confer standing. The Shareholder Class members did not suffer injury because, like the plaintiffs in *Smith*, they did not "file[] erroneous tax returns in reliance on the allegedly erroneous form or receive[] a smaller tax deduction as a result[.]" Therefore, they have not suffered a concrete and particular injury as is required for standing.

**{¶74}** Accordingly, we find that the Shareholder Class as defined lacks a sufficient injury to confer standing and warrant class certification and sustain defendants' third assignment of error. Based on that resolution, we find that defendants' fourth, fifth, and sixth assignments of error concerning the Shareholder Class are moot.

**{¶75}** Our review of the record reveals that the Shareholder Class lacks standing and individual issues overwhelm and predominate the questions common to the Subclass, and the trial court therefore abused its discretion in certifying the Shareholder Class and the Subclass.

**{¶76}** Judgment reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellants recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
MICHELLE J. SHEEHAN, J., CONCUR